344 P.2d 157

**UNION PACIFIC RAILROAD COMPANY,**
a corporation, Plaintiff and
Respondent,

v.

**STRUCTURAL STEEL & FORGE CO., a**
corporation, Defendant and Appellant.

No. 8785.

Supreme Court of Utah.

Sept. 28, 1959.

2. 3 Am.Jur. Appeal and Error, Sec. 838, p. 382.
3. City of Eureka v. Wilson, 15 Utah 53, 48 P. 41.

Fabian, Clendenin, Mabey, Billings & Stoddard, Albert J. Colton, Calvin L. Rampton, Salt Lake City, for appellant.

Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray, Marvin J. Bertoch, Scott Matheson, Jr., Salt Lake City, for respondent.

McDONOUGH, Justice.

Plaintiff railroad brought an action in the district court to recover alleged undercharges on defendant's freight shipments. The original freight charges were made in accordance with an established rate tariff which granted through-shipment rates for certain types of steel goods which were to be fabricated at an intermediate point enroute and then sent on in their altered form. The tariff provided these shipments were to be billed on the same basis as those carried nonstop from the point of origin.

It is plaintiff's contention that defendant's shipments involved were not properly classified and should have been billed at the higher rate for interrupted transport. Defendant maintained the classification was proper.

At trial plaintiff moved the court to submit questions of tariff interpretation as applied to the various shipments to the Interstate Commerce Commission. Defendant resisted this motion on the grounds that interpretation of the tariff was properly a judicial function.

The motion was granted and the questions of interpretation were ordered referred to the Interstate Commerce Commission. The court retained jurisdiction and is to make the final determination based upon the Commission's interpretative findings. From this order defendant prosecutes this interlocutory appeal.

The question presented to this court is simply whether the interpretation of the rate tariff in issue is properly the function of the Interstate Commerce Commission or of the courts. Otherwise stated: Is the doctrine of the primary jurisdiction of the Interstate Commerce Commission here applicable.

The doctrine of primary jurisdiction, like the doctrine of exhaustion of administrative remedies, is concerned with the proper relation of agencies and courts. The key difference is that, under the doctrine of primary jurisdiction the aggrieved party first appears before the judicial branch of government. While the earlier cases emphasized the desirability of uniformity in decisions, the later cases have emphasized the expertise of the agencies. They are part of the same principle that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, the agencies created by the legislative branch for regulating the subject matter should first be heard. The hope is that the agencies are better equipped by specialization, by insight gained through experience, and by more flexible procedure.

The policy behind the doctrine of primary jurisdiction gains meaning from its application. Therefore, it is incumbent upon this court to review the cases in order to ascertain the proper relationship between the courts and the administrative agencies. This is so even though there can be no fixed formula for applying the doctrine.

In Texas & Pacific R. Co., v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, the Supreme Court held that an attack by the shipper upon the reasonableness *per se* of a tariff must be made to the Commission before it is made to the courts. The reason is that a decision by the courts could create a lack of uniform application of the law resulting in the very

preferences and discriminations which the act was designed to end.

In a later case, the shipper sued the carrier for violation of the shipper's common law right to a fair share of the carrier's available railroad cars. Though the determination of the number of cars to which the shipper was entitled was apparently based upon the carrier's rule as filed with the I.C.C., the doctrine of primary jurisdiction did not apply. The court reasoned that this was merely the application of a rule and therefore no administrative question was involved. Pennsylvania R. Co. v. Puritan Coal Min. Co., 237 U.S. 121, 35 S.Ct. 484, 59 L.Ed. 867.

When a shipper sued alleging discrimination and therefore a violation of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., the carrier successfully defended upon the basis of the doctrine when it contended that the question of whether it had a tariff covering the shipper's goods was sufficiently debatable to call for an I.C.C. ruling. The carrier had a tariff for lumber. The shipper contended the tariff covered railroad ties. The Supreme Court noted that the law requires the shipper have a tariff before he can carry the goods. The evidence in the trial court was in sharp conflict on the question of whether the ties were "lumber" within the meaning of the tariffs. The Commission, the court held,

should decide the question under the doctrine of primary jurisdiction. Texas & P. R. Co. v. American Tie & Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255.

Justice Brandeis clarified the above decisions in Great Northern R. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943. He pointed out that the uniformity could be achieved by recourse to the Supreme Court. However, questions of fact should be determined by the I.C.C., when the question is the interpretation of tariffs and rules. When words are used in their ordinary meaning, the construction is a matter of law. However, when words are given a special meaning, the determination of that meaning is a question of fact. The problem in the American Tie case was whether the word "lumber" was used in its ordinary meaning or in a special sense. Given the wide difference of opinion between experts, the problem was an appropriate one for the Commission to decide.

The Supreme Court has given further insight into the question of disputes of fact versus disputes of law in a pair of recent decisions wherein the court faced the word "reasonable." United States v. Western Pacific R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126; United States v. Chesapeake & Ohio Ry. Co., 352 U.S. 77, 77 S.Ct. 172, 1 L.Ed.2d

140. The problem in each case was which of two tariffs applied to the shipments in question. In each case, the government as shipper, argued first, that the construction of the tariffs should be as the government had construed them; second, that if the court construes the tariffs as the railroad contended, then the tariffs were unreasonable in their application, and that the issue of reasonableness was in the primary jurisdiction of the Interstate Commerce Commission. The court felt that the application of the doctrine of primary jurisdiction cannot rest upon the artificiality of whether the parties plead "construction" or "reasonableness" in the application. The question of whether the I.C.C. should first pass on the construction depends on whether the question raises issues of transportation policy which ought to be considered by the Commission in the interests of uniform and expert administration of the regulatory scheme.

The problem in the Western Pacific case was whether napalm bombs lacking burster and fuse should be carried at the high tariff of incendiary bombs or at a lower tariff. The government advocated the lower tariff on the argument that a napalm bomb is not incendiary when it lacks burster and fuse. The court found the government's argument to be inconclusive. The special high costs to the railroad were the reason for the high tariff on incendiary bombs. The question was whether these high costs were applicable to the carrying of the incompleted napalm bombs in sufficient degree to require that these bombs be carried at the incendiary rate. The answer was one of policy peculiarly within the expertise of the Commission. While so holding, the court went on to say:

"By no means do we imply that matters of tariff construction are never cognizable in the courts. We adhere to the distinctions laid down in Great Northern R. Co. v. Merchants' Elevator Co. (U.S.) supra, which call for decision based on the particular facts of each case. Certainly there would be no need to refer the matter of construction to the Commission if that body, in prior releases or opinions, has already construed the particular tariff at issue or has clarified the factors underlying it. See Crancer v. Lowden, 315 U.S. 631, 62 S.Ct. 763, 86 L.Ed. 1077. And in many instances construing the tariff does not call for examination of the underlying cost-allocation which went into the making of the tariff in the first instance. We say merely that where, as here, the problem of cost-allocation is relevant, and where therefore the questions of construction and reasonableness are so intertwined that the same factors

are determinative on both issues, then it is the Commission which must first pass on them." 352 U.S. at page 69, 77 S.Ct. at page 167.

In the Chesapeake & Ohio case, the railroad was carrying goods for export to Rangoon at the beginning of the Second World War. Because Rangoon fell to the Japanese, the goods were not exported. The railroad contended that the proper freight charge was determined by the domestic tariff; the government held out for the lower export tariff. The court felt that the issue determinative of the problem of primary jurisdiction was whether the problem of tariff construction involved acquaintance with such rate-making and transportation factors as to make the issue initially one for the I.C.C. Since the parties had not briefed or argued the factors justifying the distinction between domestic and export tariff rates, the court could not decide the question. The court remanded the case in the hope that the lower court had a more complete record and could therefore determine the question.

In the light of the above cases, the record fails to support plaintiff's contention that the doctrine of primary jurisdiction applies. Since neither party attacks the reasonableness of the tariffs *per se*, the Abilene case does not control.

No contention is here made that the plaintiff has no tariff covering the commodities involved in the dispute, and, while the tariffs are in part phrased in the jargon of the construction trade, an examination thereof reveals no words or phrases to which a special meaning is to be accorded. Therefore, the American Tie case does not apply. The railroad has not argued that there are any special factors, justifying the difference in the tariffs, which require a determination of basic policy peculiarly in the expertise of the I.C.C. It follows that the case is outside the scope of the Western Pacific decision.

Since the words in the tariff are used in their ordinary meanings, their construction is a matter of law; uniformity in that construction can be guaranteed by the Supreme Court. Great Northern R. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943. The state court can apply that legal construction to a state cause of action. Pennsylvania R. Co. v. Puritan Coal Min. Co., 237 U.S. 121, 35 S.Ct. 484, 59 L.Ed. 867.

The ruling of the trial court is reversed and the cause is remanded for further proceedings in accordance with this opinion. Costs to appellant.

CROCKETT, C. J., and WADE and CALLISTER, JJ., concur.

HENRIOD, J., concurs in result.