CITY OF EL PASO, Texas, Appellant,

v.

PUBLIC UTILITY COMMISSION OF TEXAS et al., Appellees.

No. 13210.

Court of Civil Appeals of Texas, Austin.

Oct. 29, 1980.

Rehearing Denied Oct. 29, 1980.

**576**

Larry A. Baskind, Diamond, Rash, Anderson, Leslie & Smith, El Paso, for the City of El Paso.

Mark White, Atty. Gen., J. Scott Wilson, Asst. Atty. Gen., Austin, for Public Utility Commission.

Michael D. McQueen, Kemp, Smith, White, Duncan & Hammond, El Paso, and Walter E. Demond, Clark, Thomas, Winters & Shapiro, Austin, for El Paso Elec. Co.

### ON MOTION FOR REHEARING

PHILLIPS, Chief Justice.

The opinion of this Court handed down on September 24, 1980, is withdrawn, and the following opinion is substituted.

The City of El Paso, as appellant herein, appeals from the judgment of the trial court which affirmed in part and reversed in part the order of the Public Utility Commission of Texas in Re: The Application of El Paso Electric Company for a Rate Increase, Docket No. 1981 (hereinafter EPEC). This proceeding before the Public Utility Commission involved three separate cases which were consolidated into Docket No. 1981 for purposes of hearing:

1) Application of EPEC for a Rate Increase, Docket No. 1981;

2) Application of EPEC for a Certificate of Convenience and Necessity for the Palo Verde Nuclear Generating Station, Docket 478 which had previously been reversed and remanded to the Public Utility Commission by the district court of Travis County, Texas;

3) Application of EPEC for a Rate Increase, Docket 522 which had previously been reversed and remanded to the Public Utility Commission by the district court of Travis County, Texas, as to the issue of the regulatory expense of the City of El Paso.

This matter was heard by the Public Utility Commission during the last two weeks of September, 1978. The Examiner's Report was filed October 20, 1978. The full Commission met on November 9, 1978, to hear oral argument on exceptions to the Examiner's Report and to enter the final order.

A threshold question is whether the City of El Paso has a justiciable interest in the administrative ruling insofar as the Commission's ruling affected unincorporated areas outside the city. We recently held in *City of Houston v. Public Utility Commission*, 599 S.W.2d 687 (Tex.Civ.App.—Austin 1980, writ filed), that a city has no justiciable interest in an administrative hearing determining utility rates in areas outside the city's corporate limits.

 In the case at bar, appellee admits that the city does have a justiciable interest in the review of reimbursement of regulatory expense under Section 24 of Tex.Rev. Civ.Stat.Ann. art. 1446c (1980). Because the City has a justiciable interest in at least one issue, the *City of Houston* case is not controlling. As we said in *City of Frisco v. Texas Water Rights Commission*, 579 S.W.2d 66 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.): "To start the judicial machinery in motion, a plaintiff should be required to assert an interest of his own, but once the judicial machinery is in motion, any party should be allowed to argue for what he asserts to be desirable, including the interests of other private parties and the interest of the public." 579 S.W.2d at 66.

We hold that the City has a justiciable interest and we may proceed to a discussion of the merits.

Appellant is before us on two points of error and El Paso Electric Company in addition to appearing as appellee brings two cross-points of error.

### I.

Appellant's first point of error is that the trial court erred in affirming the order of

the Public Utility Commission, insofar as that order granted a "Capital Transition Allowance" for the reason that the Public Utility Commission exceeded its statutory authority in making such a grant and acted in a manner that is arbitrary, capricious and an abuse of discretion, all of which resulted in excessive rates.

The issue presented by this point is the propriety of the grant by the Public Utility Commission of a "Capital Transition Allowance" of $1.4 million to El Paso Electric Company. This term is found in the Public Utility Commission's order in finding of fact No. 16 which provides as follows:

"16. A reasonable return on invested capital of EPEC is 10.1% or $21,801,681.00 *plus a capital transition allowance of $1,406,653.00 to permit the company sufficient time to evaluate its continued level of participation in the Palo Verde Nuclear Project.*" (Emphasis added.)

The trial court affirmed this portion of the Public Utility Commission's order.

Appellant now contends that the authority of the Public Utility Commission to grant any relief is purely statutory; that the Public Utility Commission may grant only such relief as allowed by the Public Utility Regulatory Act, Tex.Rev.Civ.Stat. Ann. art. 1446c (1980); that nowhere in the Act or the Public Utility Commission's own substantive rules is there any mention of a "Capital Transition Allowance"; that Sections 39, 40 and 41 of the Act are the provisions relevant to this issue and that these provisions set the standard for the regulatory authority to use in setting rates.

Appellant proceeds to argue that under the Act and the Public Utility Commission's own rules, there is no apparent basis for granting a "Capital Transition Allowance." Appellant then cites various provisions of the Act with reference to whether or not the Public Utility Commission has the *power* to grant this "species of return."

■ We need not pursue this argument in greater detail. In our judgment, the Commission clearly had the power to grant the Capital Transition Allowance as it merely provides a return on certain construction work in progress with respect to El Paso Electric Company's participation in a nuclear project in Arizona. The Public Utility Commission had, in effect, required that the company reduce its percentage of participation in the plant and the transition allowance was merely an adjusted rate of return calculated with an eye toward a projected diminution of participation in the nuclear plant.

Whether or not the Public Utility Commission's order was erroneous is another matter. Aside from the power of the Commission to grant the questioned allowance, appellant complains of certain inconsistencies between certain findings of fact which, when the Capital Transition Allowance is added thereto, produce a percentage greater than that which, under the Commission's own findings, would be fair and equitable. There is also a possibility that appellant has raised a substantial evidence question.

■ These arguments are not those made in appellant's motion for rehearing before the Commission. The appellant cannot now raise potential problems with the order which it failed to assert in its motion for rehearing. *United Savings Association v. Vandygriff,* 594 S.W.2d 163 (Tex.Civ.App. 1980, writ ref'd n.r.e.). The Act specifically provides in Section 4 that the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Supp. 1980) applies to all proceedings before the Commission. With the exception of circumstances not present in the case before this Court, the Administrative Procedure Act provides in Section 16(e) that ". . . a motion for rehearing is a prerequisite to an appeal."

■ In its motion for rehearing, appellant accepted the fact of the Capital Transition Allowance but demanded that it be qualified in certain respects not pertinent here. As we stated in *United Savings Association v. Vandygriff, supra*: "We are of the view that section 16(e) of Article 6252–13a requires that the motion for rehearing be sufficiently definite to appraise the [agency] of the error claimed and to allow

the [agency] opportunity to correct the error or prepare to defend it." 594 S.W.2d at 168.

We overrule this point.

Appellant's second point of error is that of the trial court in affirming the order of the Public Utility Commission insofar as that order calculated the federal income tax of El Paso Electric Company for the reason that the Public Utility Commission failed to use the new lower tax rates put into effect by the Revenue Act of 1978 in making its calculations. Appellant contends that this is a violation of the laws of this state and is arbitrary, capricious and an abuse of discretion.

■ We also overrule this point. The Commission used the federal income tax rates in existence at the time of the hearing to calculate the amount of income tax to be included in the Company's cost of service. The same tax rates were in effect when the examiner issued his report on October 20, 1978. The new tax rate was not in effect for any part of the test year and did not become a "known change" until the day before the Commission's order was signed. By that time, the record in this case was closed and the change was not properly part of the record before the Commission.

■ The critical issue under this point is not whether an adjustment should be made in a utility's cost of service due to amendments in federal income tax laws, but rather whether the Commission in this case abused its discretion in refusing to reopen the case when the income tax point was first raised by the City in its motion for rehearing. The question of whether to reopen an administrative record to allow additional evidence is one addressed to the discretion of the administrative body. *Bowman Transportation Co. v. Arkansas-Best Freight Co.*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *Wabash Valley Power*

*Assn., Inc. v. Federal Energy Regulatory Comm.*, 575 F.2d 1204 (7th Cir. 1978); *West Ohio Gas Co. v. Public Utility Comm.*, 5 P.U.R. 5, 191 N.E. 105 (Ohio 1934).

Cases cited by appellant for the proposition that federal income tax reductions resulting from statutory amendment should be reflected in rate orders, are cases where the evidence was presented or notice given prior to the closing of record concerning the pending amendment.[1] The policy behind this rule is well stated in *Interstate Commerce Commission v. City of Jersey City*, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420. *Also see: Westheimer Independent Sch. Dist. v. Brockette*, 567 S.W.2d 780 (Tex. 1978).

■ If changes occur after the record has been closed and a particular proceeding has been concluded, the party asserting the change, in this case the City, has the remedy of filing for a reduction or increase in rates. Tex.Rev.Civ.Stat.Ann. art. 1446c § 42 (Supp.1979).

## II.

Appellee El Paso Electric Company brings two cross-points of error. However, our disposition of the first cross-point precludes any answer to the second point.[2]

The first point is that the trial court erred in holding that Section 24 of the Public Utility Regulatory Act, Tex.Rev.Civ. Stat.Ann. art. 1446c (1980), contemplates reimbursement of expenses incurred by a municipality in any regulatory proceeding wherein rates may be affected, and not only those proceedings involving applications for rate increases.

We sustain this point.

The Act provides for the reimbursement of regulatory expenses in Section 24 as follows:

"The governing body of any municipality shall have the right to select and engage

1. *Consumers Power Company*, 83 P.U.R.3rd 188 (Mich. Public Service Commission 1970); *Wisconsin Electric Power Company*, 77 P.U.R.3rd 435 (Wis. Public Service Commission 1969).

2. The trial court erred in holding the reasonableness of the cost of the City's regulatory expense in the amount of $256,115.10 was supported by substantial evidence.

rate consultants, accountants, auditors, attorneys, engineers, or any combination thereof, to conduct investigations, present evidence, advise and represent the governing body, and assist with litigation on public utility *rate-making proceedings*; and the public utility engaged in such proceedings shall be required to reimburse the governing body for the reasonable costs of such services." (Emphasis added).

The Commission found that only those expenses incurred by the City in cases involving applications for rate changes were reimbursable. In holding this to be error, the trial court recited in the judgment:

"Utility rates seem to be dictated, in substantial part at least, by an accumulation of prior decisions often made in proceedings not exclusively devoted to 'rates' as such. Matters are frequently decided in these other proceedings that 'make' the rates that are 'set' later. Section 24, Public Utility Regulatory Act, contemplates reimbursement of expenses incurred in any regulatory proceeding wherein rates may be affected."

The explicit language of the statute refers only to rate-making proceedings. When a statute is clear and unambiguous, no construction by the court is necessary, instead the words will be given their common meaning. *Fox v. Burgess*, 157 Tex. 292, 302 S.W.2d 405 (1957). Thus, the reimbursement required by Section 24 should apply only to rate-making proceedings.

Although other regulatory proceedings may affect rates, the clear language of the statute dictates the municipality's expenses will be reimbursed only when the proceedings are held to set rates, *i. e.*, when acting upon a formally filed "Statement of Intent" for a rate increase or decrease. A "Statement of Intent" and its requirements are specifically set out in Section 43(a) of the Act.

Furthermore, the Commission itself has differentiated between rate-making proceedings and other utility regulation matters. The Commission's Rules of Practice and Procedure specifically provide different forms of pleadings [Section 052.01.00.42(b)], and types of hearing [Section 052.01.00.-610(a)] for "rate setting hearings." When an administrative agency is created to centralize expertise in a certain regulatory area, it is to be given a large degree of latitude in the methods it uses to accomplish its regulatory function. *City of Corpus Christi v. Public Utility Commission*, 572 S.W.2d 290 (Tex.1978).

Consequently, we must reverse the judgment of the trial court regarding reimbursement of regulatory expenses and herewith render judgment affirming the order of the Public Utility Commission of Texas on that issue.

In all other respects, the judgment of the trial court is affirmed.

Affirmed in Part and Reversed and Rendered in Part on Motion for Rehearing.