**PUBLIC UTILITY COMMISSION OF TEXAS, Appellant,**

v.

**HOUSTON LIGHTING AND POWER COMPANY, et al., Appellees.**

No. 14,354.

Court of Appeals of Texas, Austin.

July 2, 1986.

Rehearing Denied Aug. 13, 1986.

Jim Mattox, Atty. Gen., Fernando Rodriguez, Asst. Atty. Gen., Austin, for appellant.

Robert J. Hearon, Jr., Austin, for Houston Lighting and Power Co.

Jefferson D. Giller, Houston, for Dow Chemical Co.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

## ON MOTION FOR REHEARING

CARROLL, Justice.

The prior opinion of this Court is withdrawn and the following is substituted therefore.

The Public Utility Commission appeals from a district court judgment reversing and remanding portions of a Commission rate order. The Commission also appeals from an order of the district court remanding a portion of the rate order as it pertains to Dow Chemical Company's assertions of rate discrimination. Houston Lighting & Power and Dow are appellees. We will modify and affirm the judgment of the district court.

## THE CONTROVERSY

This cause is an administrative appeal of the Commission's order in response to an application by HL & P for a rate increase in 1982. After a two month hearing, the Commission concluded that a 16.85% return on equity was reasonable for HL & P. As set forth in the Commission's final order, this return was reasonable only under circumstances of efficient management. Because the Commission found that HL & P management acted imprudently on numerous occasions, it penalized HL & P by lowering its return on equity from 16.85% to 16.35%. Most of the testimony in the rate hearing focused on HL & P's participation in two nuclear power ventures: the Allen's Creek Nuclear Project (ACNP) and the South Texas Nuclear Project (STNP). Broadly summarized, the Commission found that HL & P was responsible for numerous delays and cost overruns in the construction of the STNP venture, and was imprudent in not cancelling the ACNP venture by January 1, 1980. These conclusions form the basis for imposing the rate penalty.

The district court concluded that the Commission had no statutory authority to impose a penalty on a utility's rate of return. The district court also rendered judgment overruling portions of the Commission's order as it related to the recovery of ACNP cancellation costs, the treatment of tax benefits associated with $166 million in disallowed ACNP expenditures, and the allocation of the Brown & Root litigation expenses and any potential recovery by HL & P in that lawsuit. Finally, the district court remanded a portion of the cause to the Commission for specific findings as to rate discrimination against Dow. In all other respects, the Commission's final order was affirmed.

The Commission contends that the district court erred: (1) in holding that the Commission could not reduce a public utility's return on equity as a penalty for mismanagement; (2) in remanding the cause to the Commission so that HL & P could develop and potentially recover ACNP cancellation costs; (3) in its allocation of tax benefits arising from the cancellation of the ACNP; (4) in its allocation of Brown & Root litigation expenses and any potential recovery; and (5) in remanding the Dow portion of the appeal to the Commission for specific findings on rate discrimination.

## THE RATE PENALTY

In its first point of error, the Commission attacks the district court's conclusion that no statutory authority exists for penalizing a utility for mismanagement by reducing its rate of return on equity. The Commission argues that the Public Utility Regulatory Act (PURA) impliedly authorizes the Commission to impose rate penalties for poor management. *See generally* 1975

Tex. Gen. Laws, ch. 721, §§ 1–92, at 2327, as amended to 1982.[1] PURA §§ 39 and 40 provide the Commission with a set of guidelines for computing a reasonable rate of return for a utility. These provisions direct the Commission to function as a substitute for competitive market forces. The Commission stresses that in a competitive market, a poorly managed company typically realizes a lower profit. The Commission contends that it must have the authority to create this result artificially by imposing rate penalties.

■ A district court may overturn a Commission order that exceeds the Commission's statutory authority and prejudices substantial rights of the utility. *Gage v. Railroad Com'n of Texas*, 582 S.W.2d 410 (Tex.1979). Moreover, Texas courts are reluctant to imply authority in administrative agencies. *Railroad Com'n of Texas v. Atchison, Topeka and Santa Fe Railroad*, 609 S.W.2d 641 (Tex.Civ.App. 1980, writ ref'd n.r.e.). To determine whether agency action exceeds its statutory authority, we must compare the claimed excessive action with the pertinent statutory authority. *Railroad Com'n of Texas v. Graford Oil Corp.*, 557 S.W.2d 946 (Tex.1977). Pertinent to our inquiry are §§ 39 and 40(a) of PURA which in 1982 provided:

> Sec. 39. In fixing the rates of a public utility the regulatory authority shall fix its overall revenues at a level which will permit such utility to recover its operating expenses together with a *reasonable return on its investment.* (Emphasis added).

> Sec. 40(a). The regulatory authority shall not prescribe any rate which will yield more than a fair return upon the adjusted value of the invested capital used and useful and rendering service to the public.

■ At the outset, we agree that managerial competence and efficiency may be valid factors in the computation of a rate of return. A recent amendment to § 39 of PURA expressly provides that the Commission may now consider efficiency and competence in its computations. Nonetheless, the question remains whether §§ 39 and 40(a) grant the Commission authority to *lower* a rate of return it expressly finds to be reasonable, as a penalty for mismanagement.

■ The Commission argues that its authority is not limited by the express language in PURA. Indeed, as a general rule, administrative agencies are creatures of the Legislature and possess those powers expressly granted to them by statute, together with those necessarily implied from the authority conferred. *Stauffer v. City of San Antonio*, 162 Tex. 13, 344 S.W.2d 158 (1961).

In support of this proposition for the instant appeal, the Commission relies on *City of El Paso v. P.U.C. of Texas*, 609 S.W.2d 574 (Tex.Civ.App.1980, no writ). In that case, the City of El Paso challenged the Commission's grant of a "Capital Transition Allowance" to a utility because PURA did not expressly provide for such an allowance. The Court determined that the "Commission clearly had the power to grant the Capital Transition Allowance as it merely provides a return on certain construction work in progress...." *City of El Paso*, 609 S.W.2d at 577.

The holding in *City of El Paso* provides no authority for assessing a rate of return penalty. The "Capital Transition Allowance" was in effect a part of the reasonable rate of return, separately calculated by the Commission. Although §§ 39 and 40 do not provide for such an allowance, the court had no difficulty in concluding that the Commission had the power to express a part of a reasonable rate of return

---

1. PURA is found at Tex.Rev.Civ.Stat.Ann. art. 1446c, §§ 1–92 (Supp.1986). PURA was amended in 1983 and 1985. At oral argument and in their briefs, the parties chose to refer to sections of PURA "in effect in 1982," rather than using the Tex.Gen. Laws citation form for statutes since amended. For purposes of clarity, we will simply refer to sections of PURA as amended to 1982.

in this fashion. Indeed, this power is *necessarily implied* from the Commission's general rate making authority. *See Southern Pacific Transportation Co. v. Railroad Com'n of Texas*, 592 S.W.2d 74 (Tex. Civ.App.1979, writ ref'd n.r.e.).

■ Moreover, we can not reasonably equate the situation presented in *City of El Paso* with the instant cause. The power to permit an allowance differs vastly from the immense penalty power the Commission now claims. Although the amended PURA *now* provides that managerial competence and efficiency may be valid factors in *computing* a reasonable rate of return, there is no language in § 39, § 40 or any other section in PURA which would provide support for levying a rate penalty. As a result, we cannot necessarily imply from §§ 39 and 40(a) authority to impose a rate penalty for utility mismanagement.

The Commission also argues that *Railroad Commission v. Entex, Inc.*, 599 S.W.2d 292 (Tex.1980) offers support for imposing a rate penalty. In that case, the court noted many factors that might be properly considered when setting a reasonable rate of return. The Commission particularly directs our attention to "the need to provide an incentive for exploration or increased reserves." *Id.* at 295. This language represents nothing more than one factor the Railroad Commission might consider in determining a rate of return. We cannot fairly and reasonably treat the recognition of one factor that might be considered in determining a rate of return as authority for implying a power to impose a penalty.

Admittedly, some jurisdictions allow the imposition of a rate penalty on a public utility. *See State of North Carolina ex. rel. Utilities Commission v. General Telephone of the Southeast*, 208 S.E.2d 681, 285 N.C. 671 (1974); *Re General Telephone of California*, 37 Pub.Util.Rep.4th 127 (Cal. PUC, 1980). These and other cases cited by the Commission are readily distinguishable. They focus on a utility's failure to provide adequate service to ratepayers over an extended period, which is used to

justify the imposition of a rate penalty. In the instant appeal, there are no findings of poor service to ratepayers.

■ The violations and enforcement provisions of PURA further illustrate that no implied authorization exists for imposing a rate penalty. *See* Tex.Rev.Civ.Stat.Ann. art. 1446c, §§ 71–77 (1980 and as amended to 1982). These sections provide for the imposition of fines for violations of PURA, Commission rules, regulations or orders. The Commission must first petition the Attorney General to invoke these measures. The Attorney General then brings an action on behalf of the Commission in district court against the utility. The fines imposed range from $1,000 to $5,000 for a violation. After review of the detailed procedural structure of the violations and enforcement provisions of PURA, it would be unreasonable to conclude that PURA also impliedly authorizes the Commission to levy a multi-million dollar rate penalty. Moreover, it is settled that one "is not to be subjected to a penalty unless the words of the statute plainly impose it." *Commissioner v. Acker*, 361 U.S. 87, 91, 80 S.Ct. 144, 147, 4 L.Ed.2d 127 (1959).

There are other means at the Commission's disposal for combating imprudent utility management. Central to the Commission's argument are contentions that HL & P management failures produced additional costs and expenses. The Commission's rate making power includes the discretion to disallow improper expenses. Tex.Rev.Civ.Stat.Ann. art. 1446c, § 41(c)(3) (1980 and as amended to 1982); *Suburban Utility Corp. v. P.U.C. of Texas*, 652 S.W.2d 358 (Tex.1983). In fact, the Commission exercised this authority when it disallowed expenses incurred by HL & P in ACNP after January 1, 1980 (the date the Commission found a prudent utility would have cancelled the project). The PURA further provides that rate structures are to be "just and reasonable." Tex.Rev.Civ. Stat.Ann. art. 1446c, § 38 (1980 and as amended to 1982). This broad standard gives the Commission discretion to consider factors beyond costs and adjusted values of

property in determining a reasonable rate of return on equity in a rate proceeding. *Texas Alarm and Signal Association v. PUC of Texas*, 603 S.W.2d 766 (Tex.1980). As mentioned above, a recent amendment to PURA also allows the Commission to consider managerial efficiency in setting the rate of return.

This court has concluded that the Commission's reduction of a rate of return found by it to be reasonable, as a penalty for mismanagement, exceeds the Commission's authority under PURA and substantially prejudices the rights of HL & P by depriving it of revenues. In this contention, we observe that no objective standard exists for imposing a rate penalty. The Commission concedes that the .5% penalty is without support in the record. Beyond the general findings of poor management and unreasonable expenses, there is no stated basis for lowering the rate of return by .5%, as opposed to .3% or .7%. The Commission's first point of error is overruled.

Points of error two, three, and four attack the district court's conclusion that the Commission's findings regarding HL & P's mismanagement were "premature and presumptuous." The Commission contends that this conclusion exceeds the trial court's scope of review and constitutes an abuse of discretion.

■ In reviewing agency orders, a court is limited to consideration of whether the agency's findings and decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; or

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19(e) (Supp.1986). Moreover, it is well settled that the court does not substitute its judgment for that of the administrative agency. *Imperial American Resources Fund, Inc. v. Railroad Com'n of Texas*, 557 S.W.2d 280 (Tex.1977).

■ We hold that the district court did not comply with the above standards in making its "premature and presumptuous" conclusion and was in effect, substituting its judgment for that of the Commission. The "premature and presumptious" conclusion exceeds the limitations imposed by § 19(e). Nonetheless, a district court may properly determine whether an agency's action is within the powers delegated to that agency. *Gage v. Railroad Com'n of Texas, supra.* We have held that the Commission exceeded its authority in assessing the rate penalty. To the extent that this conclusion relates to the rate penalty issue, the error of the district court was not such error reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.Civ.P.Ann. 434 (1985). The Commission's third, fourth and fifth points of error are overruled. Nonetheless, because this conclusion is the basis for the district court's order prohibiting the Commission from using its findings regarding HL & P management of STNP, we modify the district court's final judgment to delete conclusion number seven.

## ACNP CANCELLATION COSTS AND TAX BENEFITS

The Commission argues that the district court abused its discretion when it remanded this cause to the Commission on the issue of ACNP cancellation costs. The Commission's final order determined that ACNP should have been cancelled on January 1, 1980. All costs incurred by HL & P before this date were deemed prudent and recoverable from the ratepayers over a ten year amortization period. Expenditures on the project after this date were not recoverable from the ratepayers. HL & P actually cancelled ACNP on August 26, 1982. Because of the cut-off date imposed by the

Commission, cancellation costs at that time were disallowed. In its motion for rehearing to the Commission, HL & P requested that it be allowed to present evidence of cancellation costs it would have incurred had it cancelled ACNP on January 1, 1980. The Commission denied this request. Before the district court, HL & P successfully argued that if it had cancelled ACNP on January 1, 1980, it would have incurred cancellation costs properly chargeable to the ratepayers. As a result, the district court remanded this cause to the Commission with instructions that it hear evidence on the ACNP cancellation costs.

■ District courts may remand a cause to an agency for consideration of additional evidence and issues. Tex.Rev.Civ.Stat. Ann. art. 6252–13a, § 19(d)(2) (Supp.1986). The exercise of this authority is proper where the evidence is material, and good reason exists for the failure to present the evidence before the agency. *Id; Texas Oil & Gas Corp. v. Railroad Com'n of Texas,* 575 S.W.2d 348 (Tex.Civ.App.1978, no writ).

■ The Commission argues that HL & P did not plead for the district court to remand this cause to the Commission under § 19(d)(2). Nonetheless, HL & P's petition clearly asserts that the Commission erred in failing to include cancellation costs incurred in connection with ACNP. HL & P also asserted that cancellation costs would have been incurred even if ACNP had been cancelled on January 1, 1980. We find that HL & P's petition clearly indicated to the district court and to the Commission that HL & P sought cancellation costs. Moreover, we have searched the record and find no objection by the Commission asserting the absence of pleadings for remand under § 19(d)(2). Insufficiency of pleadings cannot be raised for the first time in the appellate courts. *Sherman v. Provident American Insurance Company,* 421 S.W.2d 652 (Tex.1967); *Lowther v. Lowther,* 578 S.W.2d 560 (Tex.Civ.App.1979, writ ref'd n.r.e.).

In reviewing a trial court's determination of a matter within its discretion, an appellate court cannot simply substitute its own judgment for that of the trial court. *Pratt v. Texas Dept. of Human Resources,* 614 S.W.2d 490 (Tex.Civ.App.1981, writ ref'd n.r.e.). Rather, it must determine if the trial court's decision was arbitrary or unreasonable. *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649 (Tex.1970).

■ We have concluded that the district court did not act arbitrarily or unreasonably in remanding this cause to the Commission on the issue of cancellation costs as of January 1, 1980. The additional evidence is material in that it may establish an allowable expense. Regulatory agencies may not arbitrarily disallow expenditures; if shown to be actual, necessary, and reasonable, cancellation costs may be a recoverable operating expense. *Suburban Utility Corp. v. P.U.C. of Texas, supra.* Although the Commission has the power to disallow improper expenses, nothing in the record indicates that cancellation costs were considered at the rate hearing. The Commission, if it had considered evidence on cancellation costs as of January 1, 1980, could have reached a conclusion contrary to its present position. The substance of the Commission's argument is simply that HL & P is not entitled to the recovery of cancellation costs because it did not cancel ACNP by January 1, 1980.

There is also good reason for HL & P's failure to present evidence on cost of cancellation as of January 1, 1980. HL & P did not know, and could not reasonably anticipate that the Commission would impose retroactively January 1, 1980 as a prudent cancellation date. In addition, we note that there is no finding that the decision to undertake the ACNP was imprudent. After the cut-off date was announced by the Commission in its final order, HL & P urged the Commission to consider hearing evidence of cancellation costs as of the cut-off date in its motion for rehearing. We overrule the Commission's fifth and sixth points of error.

In its seventh point of error, the Commission attacks the district court's allocation of a portion of ACNP tax benefits to HL &

P and its shareholders. HL & P incurred $166 million of expenses in ACNP after January 1, 1980. Because of the imposed prudent cancellation date, these costs were not recoverable from the ratepayers. HL & P proposes to treat the entire $362 million spent on ACNP as a tax loss. In its motion for rehearing, HL & P asserted that the tax benefits associated with the $166 million in disallowed ACNP costs should be allocated to HL & P and its shareholders. The tax benefits associated with the costs incurred before the cut-off date would be passed on to the ratepayers. The Commission ordered HL & P to flow back to the ratepayers the value of any tax benefit attributable to the $166 million in disallowed ACNP costs. The district court reversed this order and allocated this benefit to HL & P.

In response to HL & P's argument that tax benefits must follow the assignment of costs, the Commission offers three contentions. First, under *Suburban Utility*, the Commission has discretion to disallow improper expenses. Thus, the award of these tax benefits to the ratepayers was a proper allocation of cancellation expenses between the parties, and the district court improperly substituted its judgment for that of the Commission. Second, under the district court order, ratepayers will be required to assume a greater income tax expense than necessary. *See Suburban Utility Corp. v. P.U.C. of Texas, supra.* Finally, the Commission appears to argue that if the $166 million is written off by HL & P and its shareholders, this write-off will generate a "phantom" tax expense for the ratepayers.

We find that *Suburban Utility* offers no support for the Commission's initial position. Although *Suburban Utility* grants the Commission discretion to disallow improper expenses in computing rates, that is not what the Commission did in this instance. HL & P is not seeking to include an expense in its rate base; in fact, the $166 million in question was expressly disallowed.

Moreover, *Suburban Utility* does not support the contention that the ratepayers will bear a greater income tax expense than necessary. In *Suburban Utility*, the utility chose to operate as a Subchapter S Corporation and *elected* a tax status which prevented it from being taxed at corporate rates. As a result, the shareholders of the utility had tax liability for all income distributed to them by the utility. The court held that although the utility did not pay federal income taxes, it was entitled to a cost of service allowance for federal income taxes either paid by the shareholders on the utility's taxable income, or for the tax it would pay if it was a normal corporation, *whichever was less*. This result was appropriate because the utility elected its tax status. If the utility had been allowed to choose the greater of the two options, there might indeed be a "phantom" tax as now contended by the Commission. In effect, the utility would enjoy a windfall by charging the ratepayers a federal income tax expense not actually incurred by the utility or the shareholders.

Further, the case of *Southern Union Gas Co. v. Railroad Commission*, 701 S.W.2d 277 (Tex.App.1985, writ pending) does not control the disposition of this issue. In that case, the utility incurred certain expenses that were improper for ratemaking purposes. Without presenting authority, the utility argued that these expenses should also not be characterized as tax deductions. Thus, the utility effectively asked the Commission to calculate the rate of return based upon a tax liability in excess of its true tax liability. By contrast, in the instant cause, HL & P has an improper expense and it only seeks to utilize any tax benefit arising out of it.

It appears that if an expense is included in the cost of service, any tax benefit associated with that expense must be allocated to the ratepayers. *See Suburban Utility Corp. v. P.U.C. of Texas, supra.* Similarly, tax deductions cannot be allocated to ratepayers where the expenses from which the deductions arise are not includable in the cost of service. To do otherwise would create a situation where tax savings, realized from costs a utility is

required to assume, are used to reduce and subsidize rates.

■■■ We must determine if the Commission's order allocating the tax benefits was arbitrary, capricious, characterized by an abuse of discretion or a clearly unwarranted exercise of discretion under APTRA § 19(e)(6). This section is construed narrowly; it is not a catchall provision for reviewing the rationale of agency actions. *Texas Health Facilities Com'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446 (Tex. 1984). Nonetheless, it still operates as a safeguard against the prohibited agency action. *Id.* When considering these four prohibited characteristics, the agency's decision requires reversal only "when the reviewing court is able to conclude from the record as a whole ... that the agency did consider the relevant factors but its choice was a clear error of judgment." Powers, *Judicial Review of the Findings of Fact Made by Texas Administrative Agencies in Contested Cases*, 26 Tex. Tech L. Rev. 475 (1985). We may not substitute our judgment for the agency's decision, and we must affirm if a rational basis for the decision is presented. *Imperial American Resources Fund, Inc. v. Railroad Com'n of Texas, supra.* In summary, as long as the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made, the decision is not arbitrary or capricious.

■■■ We have concluded that the Commission's order directing HL & P to flow back to the ratepayers the value of any tax benefit associated with the $166 million in disallowed ACNP costs was capricious and clearly an unwarranted exercise of discretion under APTRA § 19(e)(6). The $166 million was not includable in the cost of service. The Commission assigned this cost to HL & P shareholders, who should enjoy any resulting tax benefit. We do not find that this result will produce any "phantom" tax for the ratepayers. The Commission does not direct us to any finding of fact or evidence in the record that in any way supports its contention of a "phan-

tom" tax. As set out above, the Commission incorrectly relied on *Suburban Utility*. If the value of the tax write-off is passed on to the ratepayers, HL & P shareholders will in effect be forced to subsidize rates. We overrule the Commission's seventh point of error.

### THE STNP LITIGATION

As a result of numerous delays and construction problems with STNP, HL & P sued the project's architect, engineer and constructor, Brown & Root, Inc. The Commission ordered that the ratepayers receive the benefit of any recoveries by HL & P in this litigation. Further, all litigation expenses and any judgments assessed against HL & P were to be assumed by HL & P, and could not be included in the rate base. The district court reversed the Commission's order concluding that all expenses and recoveries in the STNP litigation should be allocated between shareholders and ratepayers in accordance with respective percentage of cost paid in the construction of STNP. In its ninth point of error, the Commission argues for the reinstatement of its order allocating STNP litigation expenses and recoveries.

On appeal, the Commission asserts that the ratepayers are in a "helpless" position and bear the risk and burden of STNP. While the shareholders have a direct voice in the utility's affairs, ratepayers have no choice but to continue to purchase electricity from HL & P and are completely unable to prevent or effectively protest the decisions of HL & P's management. Moreover, because the ratepayers have borne the risk and burden of STNP, any benefits that might arise from this endeavor should be allocated to the ratepayers.

■■■ We find that the Commission clearly erred in awarding the ratepayers all potential benefits of the STNP litigation, while burdening HL & P shareholders with all costs. There is no finding or combination of findings to support the contention that the ratepayers have borne the "risk and burden" of STNP *in total.* There has

yet to be a determination as to whether the ratepayers or the shareholders ultimately will pay for STNP. The Commission's position places the utility in the position of bringing lawsuits for the benefit of ratepayers. We cannot reasonably say that the Commission considered the relevant factors in reaching this decision, or presented a rational basis for it. All expenses and recoveries in the STNP litigation are to be allocated between shareholders and ratepayers in accordance with the respective percentage of cost paid by each in the construction of STNP. We overrule appellant's ninth point of error.

## THE DOW ORDER

During the presentation of HL & P's case before the Commission, HL & P proposed three rate schedules for industrial consumers: "Large Overhead Service (A)," also known as "LOS–A"; "Large Overhead Service (B)," also known as "LOS–B"; and "Dow contract for Firm and Interruptible Service." Both of the LOS rate schedules were for firm power—not interruptible. Before the Commission and district court, Dow asserted that the Commission was allowing HL & P to charge Dow a rate significantly more for firm electric service power than HL & P charged other large industrial customers under the LOS–B rate schedule. As a result, Dow would pay $2,692,240 more for the same amount of firm power each year. Dow complained of the discriminatory relationship between its rate for firm service and the LOS–B rate given other large industrial customers. The Commission's final order does not reach a conclusion as to the discriminatory relationship between these rates. The district court remanded the Dow portion of the appeal to the Commission for entry of specific findings as to rate discrimination. In its tenth point of error, the Commission argues that specific findings are not required as to Dow and the trial court erred in remanding the Dow appeal to the Commission.

The Commission relies on the rule that it is given broad discretion to determine the method of rate design, so long as it is "just, reasonable and not unreasonably discriminatory." *Texas Alarm & Signal*, 603 S.W.2d at 772. Classifications in a rate proceeding may be based upon any number of factors: "the cost of service, the purpose for which the service or product is received, the quantity or amounts received, the different character of the services furnished, the time of its use or any other matter which presents a substantial difference as a ground of distinction." *Caldwell v. City of Abilene*, 260 S.W.2d 712, 714 (Tex.Civ.App.1953, writ ref'd n.r.e.), *quoted with approval* in *Texas Alarm*, 603 S.W.2d at 772. In view of these broad guidelines, the Commission concludes that specific findings were not required as to Dow.

Dow responds that the findings of fact in the Commission's final order are insufficient because they do not satisfy the statutory criteria required by PURA in §§ 38 and 45. Section 38 directs the Commission to insure that its rates are just, reasonable and not unreasonably discriminatory. This standard is applicable to the Commission in its setting of rates. *Amtel Communications v. P.U.C. of Texas*, 687 S.W.2d 95 (Tex.App.1985, no writ). Section 45 forbids unreasonable discrimination by a utility as to rates or services. Thus, it only applies to practices by a public utility. *Id.*

The Commission's final order includes the following finding of fact:

> The record is inconclusive on whether Dow rates are discriminatory relative to LOS–B rates, and therefore an inquiry should be instituted to investigate the issue more fully. In the meantime, the rate design stipulated to in this case for Dow and LOS–B should be approved.

There are no other findings of fact or conclusions of law that appraise the discriminatory characteristics of the Dow firm rate order. From this single finding, it is in no way evident that the Commission assessed and acted upon the criteria set forth in §§ 38 and 45 of PURA.

We acknowledge that § 37 grants the Commission the power of *reasonable* classification; and by implication, some de-

gree of discrimination may be in the public interest under *certain* conditions and circumstances. In such a case, discrimination would not be a violation of PURA. *Amtel Communications v. P.U.C. of Texas, supra.* Nonetheless, §§ 38 and 45 require the Commission to determine *"when* different rates, preferences, or advantages become *unreasonable* as between classes or within a class, and therefore unlawful." *Id.* at 101 (emphasis in original). Under these sections, it must be evident that the Commission assessed the statutory criteria of unreasonable discrimination, and unjust, unreasonable, or unreasonably discriminatory rates to conclude ultimately that no violation of PURA §§ 38 and 45 was indicated. *Amtel Communications v. P.U.C. of Texas, supra.* In other words, in a contested case, the Commission must find that the prohibitions and directives of those sections were not violated. The Commission's single finding fails to satisfy this requirement.

We are again guided by the Supreme Court's holding in *Charter Medical* to consider if from *any* of the agency's individual findings of fact there is:

> any ground or set of grounds which *the court* believes sufficient to "support" in a general way the determinations reached by the agency....

*Amtel Communications,* 687 S.W.2d at 107 (Emphasis in original). The Commission's findings do not reflect an agency determination that the discrimination suffered by Dow is not unreasonable in light of other factors clearly implicit in the findings made by the Commission. After considering the Commission's findings in their totality, we hold that they in no way reflect that the Commission appraised the criteria in §§ 38 and 45 of PURA and ultimately concluded that there was no violation of the prohibitions and directives in those sections. We overrule the Commission's tenth point of error.

## HL & P CROSS POINTS OF ERROR

By its first cross point, HL & P asserts that the trial court erred in affirming the Commission's order setting January 1, 1980 as the cut-off date for a prudent cancellation of ACNP. The finding is supported by the testimony of Robert Smith-Johannsen, on behalf of the Committee For Consumer Rate Relief. In summary, Smith-Johannsen testified that the decision to continue the ACNP from 1976 to 1979 was questionable in view of escalating capital costs and regulatory burdens. Based upon this testimony, the Commission determined that HL & P was imprudent in failing to cancel ACNP by January 1, 1980.

■ HL & P attacks Smith-Johannsen's testimony as being clearly defective. This contention rests on HL & P's assertions that Smith-Johannsen lacked expertise on the subject matter about which he testified and further, he relied on unreliable hearsay sources. On this basis, the Commission's order would not be supported by substantial evidence as required by APTRA § 19(e)(5). The argument is without merit. It is an established premise that an agency may, or may not, accept the testimony of witnesses, experts or nonexperts. *Southern Union Gas v. Railroad Com'n of Texas,* 692 S.W.2d 137 (Tex.App.1985, writ ref'd n.r.e.). The agency must judge the weight to be accorded the testimony of each witness. *Id.*

■ HL & P also argues that its management decisions were not evaluated under the circumstances in which they were made. The record does not support this position. The examiner's report concludes that HL & P ignored historical data available from 1976 to 1979. Pertinent information included a comparative examination of plant capacity factors for nuclear and coal operations and a substantial increase in safety promulgations from the Nuclear Regulatory Commission in light of the Three Mile Island accident. Moreover, Smith-Johannsen stated that the prudence of HL & P in its cancellation of ACNP should be determined by an inquiry into the reasonableness and rationality of management judgment under circumstances *existing at this time* (1976–1979). We find nothing in the record to suggest that the

**110**

Commission used a "hindsight approach" in assessing the judgment of HL & P's management. The first cross point of error is overruled.

 The second cross point contests the trial court's affirmance of the Commission's order refusing to allow any return or interest on the unamortized balance of the pre-January 1, 1980 ACNP construction costs. As noted above, the Commission has discretion to allow or disallow certain expenses for rate making purposes. Tex. Rev.Civ.Stat.Ann. art. 1446c, § 41(c)(3) (1980 and as amended to 1982); *Suburban Utility Corp. v. P.U.C. of Texas, supra.* The record further reflects that straight line amortization has been applied by the Commission in similiar situations. We overrule HL & P's second cross point of error.

HL & P also asserts that it was denied procedural and substantive due process because it relied on an earlier rate proceeding that considered HL & P's management of STNP. This earlier proceeding established a separate docket and specific procedure by which the Commission was to monitor STNP. HL & P contends that it received no notice that STNP management was to be an issue in docket 4540, the cause at bar. The Commission's consideration of STNP mismanagement was only evident in its imposition of the rate penalty and in its allocation of STNP litigation costs. Because we have already held for HL & P on these issues, HL & P's third cross point is moot.

 The final cross point of HL & P argues that the Commission's reduction of the rate of return of Utility Fuels, Inc., HL & P's coal-supply affiliate, is: (1) not supported by substantial evidence, (2) arbitrary and capricious, and (3) an abuse of discretion. The examiner's report recommends that Utility Fuels' rate of return of 17% be lowered by using Utility Fuels' capital structure as of the date the rate increase hearing was filed by HL & P. After reviewing the testimony noted in the examiner's report, we conclude that there is substantial evidence to support the Com-

mission's lowering of Utility Fuels' rate of return. HL & P's fourth cross point of error is overruled.

We modify the judgment of the district court, and as modified, it is affirmed.