TIEC v. PUC 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-543-CV





TEXAS INDUSTRIAL ENERGY CONSUMERS,



 
 APPELLANT


vs.





PUBLIC UTILITY COMMISSION OF TEXAS


AND SOUTHWESTERN ELECTRIC POWER COMPANY,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT



NO. 91-5201, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 




 Texas Industrial Energy Consumers ("TIEC"), intervenor in a proceeding before
the Public Utility Commission (the "Commission"), appeals the district court's judgment affirming
the Commission's order determining that Southwestern Electric Power Company ("Southwestern")
was prudent in incurring various fuel and fuel-related expenses. In five points of error, TIEC
complains of the district court's judgment affirming the Commission's order and the district
court's refusal to enter findings of fact and conclusions of law in connection with TIEC's suit for
judicial review. We will affirm the judgment of the district court.



FACTUAL AND PROCEDURAL BACKGROUND


 At issue in this appeal is the Commission's order issued in connection with a fuel-
reconciliation proceeding conducted pursuant to sections 16 and 43(g) of the Public Utility
Regulatory Act ("PURA"), Tex. Rev. Civ. Stat. Ann. art. 1446c (West Supp. 1993). A fuel
reconciliation proceeding is not a general rate case, id. § 43(g)(2)(C); rather, it is a determination
of the amount of historic fuel and fuel-related costs that may be recovered by a utility from its
ratepayers as reasonable and necessary operating expenses. See 16 Tex. Admin. Code § 23.23
(1993). The fuel-reconciliation period at issue in the present case covers costs Southwestern
incurred from June 1986 through October 1989.

 Southwestern is a Louisiana-based electric utility that serves customers in several
northeast Texas counties. In 1972 Southwestern and American Metal Climax entered into a
twenty-five year coal supply contract (the "supply contract"). This contract included a "take-or-pay" provision that required Southwestern to purchase a base quantity of coal annually, which
could be adjusted by no more than plus or minus five percent of the base amount.

 At approximately the same time the supply contract was executed, Southwestern
was negotiating an agreement with several railroads to provide transportation for the purchased
coal. A letter agreement was executed in 1974 (the "transportation letter agreement"). This letter
agreement also contained a take-or-pay provision requiring Southwestern to ship quantities of coal
consistent with the quantities reflected in the supply contract. In 1979 a dispute arose between
Southwestern and the railroads over appropriate transportation charges, and Southwestern filed
suit in federal district court. The Texas Attorney General obtained leave to intervene in the
lawsuit. In 1984 Southwestern and the railroads entered into a settlement and compromise
agreement (the "settlement agreement") that resolved the dispute. As an intervenor in the lawsuit,
the Texas Attorney General signed the settlement agreement. As required by the settlement
agreement, Southwestern and the railroads executed a new transportation agreement (the
"transportation contract"), including the same take-or-pay provision requiring Southwestern to
ship quantities of coal consistent with the quantities reflected in the supply contract.

 By the mid-1980s, the coal purchased and delivered under the supply and
transportation contracts began to outpace Southwestern's demand. In order to keep inventories
from growing to unmanageable levels, Southwestern began burning coal in lieu of less expensive
lignite. Because Southwestern never attempted to renegotiate the take-or-pay provision of either
the supply or transportation contracts, TIEC argued in the fuel reconciliation proceeding before
the Commission that Southwestern acted imprudently and, accordingly, that at least $10.8 million
in fuel-related expenses should be disallowed.

 Because the cost of transportation is often a major portion of coal costs, the
Commission reviewed both the supply contract and the transportation contract in connection with
the fuel-reconciliation proceeding. After considering the evidence, the hearings examiner
concluded that the 1972 supply contract was imprudent from its inception and that Southwestern's
failure to obtain additional flexibility in the take-or-pay provision prior to executing the 1984
transportation contract was also imprudent. Alternatively, the examiner concluded that, even if
the 1972 supply contract was prudent at its inception, by 1984 Southwestern should have realized
that the take-or-pay provision in both the supply and transportation contracts needed to be
renegotiated. Accordingly, the examiner recommended that the Commission disallow recovery
of costs associated with the take-or-pay provisions of both contracts.

 Contrary to the examiner's recommendation, the Commission's final order, which
was issued November 7, 1990, contained findings of fact and conclusions of law declaring both
the supply contract and the transportation contract prudent. Accordingly, the Commission's order
approved Southwestern's fuel and fuel-related expenses during the reconciliation period with the
exception of one disallowance that is not at issue in this appeal. Each of the three commissioners
filed a partial concurrence and partial dissent to the Commission's November 7 order. After this
order was issued, TIEC filed a motion for rehearing. The Commission overruled TIEC's motion
on January 31, 1991, with an amended order. The order on rehearing adopted the November 7
order with minor changes, but reflected no substantive change in the outcome of the fuel-reconciliation proceeding. TIEC then filed a second motion for rehearing, which was overruled
by operation of law. 

 Following the Commission's disposition of the motions for rehearing, TIEC filed
a suit for judicial review in district court pursuant to section 69 of PURA and section 19 of the
Administrative Procedure and Texas Register Act ("APTRA"), Tex. Rev. Civ. Stat. Ann. art.
6252-13a, § 19 (West Supp. 1993). At issue in both the district-court action and the present
appeal is the order on rehearing issued January 31, which incorporated, as amended, the prior
order issued November 7.

 In its first four points of error, TIEC contends that the district court erred in
affirming the Commission's order because the order does not reflect the decision of a majority of
the commissioners, because the Commission based its decision in part on irrelevant
considerations, and because the Commission failed to exercise its delegated authority. In its final
point of error, TIEC contends the district court erred in refusing to enter findings of fact and
conclusions of law as requested by TIEC.



DISCUSSION


 In points of error one and four, TIEC complains that the district court erred in
affirming the Commission's order on rehearing because the order does not reflect the decision of
a majority of the commissioners. Specifically, in point of error one, TIEC complains that the
order on rehearing failed to incorporate a disallowance of fuel and fuel-related expenses even
though a majority of the commissioners approved such disallowance.

 All three commissioners filed separate opinions concurring in part with and
dissenting in part from the Commission's November 7 order. These separate opinions were
incorporated into the order on rehearing. TIEC contends, based on its reading of these separate
opinions, that a majority of the commissioners found the supply and transportation contracts
imprudent. Accordingly, TIEC contends that a finding imposing a $10.8 million disallowance was
required. We disagree. Contrary to TIEC's interpretation of the separate opinions, the
Commission's order on rehearing does not include findings of fact or conclusions of law indicating
that Southwestern imprudently entered into the supply and transportation contracts at issue. 
Rather, the Commission's order indicates in conclusion of law four that Southwestern sustained
its burden of proof establishing that it acted prudently in accepting the take-or-pay provision in
the 1972 supply contract and indicates in finding of fact 156 that Southwestern acted prudently
in accepting the same take-or-pay provision in the 1984 transportation contract. Further, finding
of fact 163 authorized Southwestern's recovery of over $12.6 million through surcharges for its
underrecovery of fuel and fuel-related expenses. In other words, rather than impose a $10.8
million dollar disallowance for Southwestern's overrecovery of fuel and fuel-related expenses, the
Commission allowed Southwestern a recovery of over $12.6 million for underrecovery of fuel and
fuel-related expenses. 

 Because TIEC contends, based on its reading of the commissioners' separate
opinions, that the Commission's order failed to incorporate a disallowance approved by the
majority, we must review each separate opinion. Commissioner Meek's opinion is wholly
consistent with the Commission's order on this issue and, therefore, is not at issue in this appeal. 
Both parties agree that Meek concluded that the supply and transportation contracts were prudent
at inception and thereafter and that the $10.8 million disallowance was inappropriate. 
Commissioner Greytok's opinion indicates that she concurred in the Commission's order finding
the supply and transportation contracts prudent at inception; however, she also dissented,
concluding that Southwestern acted imprudently in failing to renegotiate the supply and
transportation contracts after 1984. Commissioner Campbell indicated in her opinion that she
would "adopt the Examiner's Report and Supplemental Examiner's Report in its entirety" except
that she would "concur with Commissioner Greytok and Chairman Meek in finding that the 1984
rail settlement [agreement] was prudent." 

 TIEC argues that Campbell, by adopting the examiner's report, impliedly
concluded that the supply and transportation contracts were imprudent at inception, that
Southwestern acted imprudently in failing to renegotiate the take-or-pay provision of the
transportation letter agreement before the 1984 transportation settlement agreement, and that
Southwestern acted imprudently in failing to renegotiate both the supply and transportation
contracts after 1984. Based on this reading of Campbell's opinion, TIEC contends that
"Commissioner Campbell's `dissenting' opinion thus in fact concurs with Commissioner
Greytok's conclusion that a disallowance associated with [Southwestern's] failure to obtain
additional flexibility in its [supply and transportation] contracts was appropriate." We disagree.

 In its first motion for rehearing before the Commission, TIEC asserted the above
arguments. Faced with the November 7 order, the supporting findings of fact and conclusions of
law, and TIEC's motion, each commissioner concurred in the order on rehearing, which again
declared the supply and transportation contracts prudent and, further, authorized Southwestern's
additional recovery of over $12.6 million in fuel and fuel-related expenses. In other words, none
of the three commissioners, including Campbell, indicated that the November 7 order or the
findings and conclusions incorporated therein incorrectly stated the Commission's decision as to
the prudence of Southwestern's actions. We believe the Commission's consideration and rejection
of TIEC's arguments is significant to our disposition on appeal. Clearly, the commissioners
believed that the Commission's order accurately reflected their decision. 

 Although the commissioners may have believed the Commission's order accurately
reflected their decision, TIEC argues that the separate findings of Greytok and Campbell
combined, as a matter of law, to create a majority consensus as to Southwestern's imprudence in
accepting the take-or-pay provision in the supply and transportation contracts. Initially, we note
that an agency's final orders are presumed to be valid. Pedernales Elec. Coop., Inc. v. Public
Util. Comm'n, 809 S.W.2d 332, 341 (Tex. App.--Austin 1991, no writ). Further, final orders
should not be subjected to a hypertechnical standard of review. See State Banking Bd. v. Allied
Bank Marble Falls, 748 S.W.2d 447, 448-49 (Tex. 1988). Accordingly, courts should seek to
enforce rather than overrule an agency's order where the order can be reasonably interpreted to
comply with applicable law.

 We must determine whether, as a matter of law, the separate findings of Greytok
and Campbell combine to establish that Southwestern acted imprudently so as to require a
disallowance. Greytok found that the supply and transportation contracts were prudent at
inception and only became imprudent after 1984. Campbell found the 1972 supply contract
imprudent at inception, as reflected by her agreement with the examiner's report, yet found the
1984 transportation contract, which contained the same take-or-pay provision as the supply
contract, prudent when executed. TIEC reads Campbell's comments in her separate opinion
broadly to imply that, consistent with the examiner's report, she also concluded that the 1974
transportation letter agreement should have been renegotiated prior to the 1984 transportation
settlement agreement and that both the supply and transportation contracts should have been
renegotiated after 1984.

 Appellees, the Commission and Southwestern, on the other hand, contend that
Campbell's statement that she believed the transportation settlement agreement was prudent
"extended to all elements of the Examiner's Report that, to her, were inconsistent with a finding
of prudence of the settlement, including the failure to turn around and immediately attempt to
renegotiate a prudent contract." Similarly, a finding that the transportation letter agreement
should have been renegotiated before the 1984 transportation settlement agreement would be
inconsistent with a finding that the 1984 transportation contract, which contained the same take-or-pay provision at issue prior to 1984, was prudent when executed. Appellees interpretation of
Campbell's separate opinion finds support in her comments at the final order hearings. (1) For
example, Campbell stated that she agreed with the examiner's report except that she found the
transportation settlement agreement "to be prudent and all the things that flow out of that finding
of prudence."

 Accepting appellees' interpretation of Campbell's comments in her separate opinion
supports the validity of the Commission's order. On the other hand, accepting TIEC's
interpretation and concluding that Campbell concurred in Greytok's conclusion that both contracts
were imprudent because the take-or-pay provision should have been renegotiated is completely
inconsistent with Campbell's concurrence in the order on rehearing and would in fact render her
concurrence meaningless. Because we presume that an order is valid, TIEC has the burden in this
appeal to prove that the Commission's order was invalid. Faced with two plausible interpretations
of the Commission's order, one of which renders the order valid and one of which renders the
order invalid, we apply the presumption of validity and overrule TIEC's first point of error.

 In point of error four, TIEC complains that the district court erred in affirming the
Commission's order because the order does not reflect that a majority of the commissioners
adopted the findings of fact and conclusions of law contained therein. TIEC claims that the order
is invalid on this basis and that "[t]his case must be remanded to the Commission for entry of a
valid final order." In its brief to this Court, TIEC argues that the commissioners "never voted
on the individual findings of fact and conclusions of law" and that "[a]t no point did the individual
Commissioners identify the findings of fact and conclusions of law that they supported." 
Accordingly, TIEC makes the broad assertion that "it thus is impossible to determine that a
majority of the Commissioners adopted the findings of fact and conclusions of law incorporated
in the Order on Rehearing."

 All three commissioners concurred in the Commission's order except as reflected
in their separate opinions. Accordingly, each commissioner identified the findings and
conclusions they supported by way of specifically identifying issues in the Commission's order
with which they disagreed. Although each commissioner dissented from the Commission's order,
the issues upon which they dissented do not undermine the majority decision of the Commission. 
Meek dissented on findings and conclusions not at issue in this appeal; accordingly, TIEC
essentially concedes that Meek's comments are consistent with the Commission's final order on
rehearing for purposes of this appeal. Greytok dissented from the Commission's order,
concluding that the supply and transportation contracts should have been renegotiated after 1984. 
Meek clearly did not agree with Greytok's conclusion, and we have concluded above that
Campbell's comments also should not be interpreted as reflecting an agreement with Greytok's
conclusion. Campbell also dissented, concluding that the supply contract was imprudent from its
inception. Neither Meek nor Greytok agreed with this conclusion. Accordingly, we conclude
that, although all three commissioners dissented from some aspects of the Commission's final
order, the order accurately reflects the findings and conclusions of a majority. We overrule point
of error four. 

 In points of error two and three, TIEC complains that the district court erred in
affirming the Commission's order because the Commission based its decision in part on irrelevant
considerations and because the Commission refused to exercise its delegated authority. Both
complaints stem from the Commission's consideration of the Attorney General's participation in
the 1984 transportation settlement agreement executed in connection with Southwestern's lawsuit
against the railroads over transportation charges.

 The Attorney General of Texas, representing the public interest, intervened in
Southwestern's lawsuit against the railroads to prevent the railroads from charging unfair rates. 
As a party to this suit, the Attorney General joined in the settlement and compromise agreement
requiring Southwestern and the railroads to execute the 1984 transportation contract. Based on
this evidence, the Commission found, as reflected in finding of fact 162, that "[t]he Attorney
General of Texas, representing the State, found the 1984 Coal Transportation settlement to be in
the public interest." Further, Campbell, in her separate opinion in the November 7 order, stated
that "[t]he State of Texas being a signatory to the settlement precludes us from now finding such
settlement imprudent." 

 In its first motion for rehearing, TIEC focused on Campbell's statement and argued
that the Commission inappropriately relied on the Attorney General's actions in finding that the
1984 transportation settlement agreement was prudent. In response to TIEC's motion, Campbell
struck the above-quoted sentence in the Commission's order on rehearing and added the following
statement: "I am inclined not to second guess the State of Texas, a signatory to the settlement."

 In its appeal to this Court, TIEC stresses Campbell's prior and amended statements. 
In point of error three, TIEC contends that the Attorney General's approval of the transportation
settlement agreement was an irrelevant consideration in a fuel-reconciliation proceeding. We
disagree. A legally relevant factor is one the legislature intended the agency to consider when
reaching its decision. Consumers Water, Inc. v. Public Util. Comm'n, 774 S.W.2d 719, 721
(Tex. App.--Austin 1989, no writ). Prudence is clearly a relevant factor in a fuel-reconciliation
proceeding. See PURA, § 38; 16 Tex. Admin. Code § 23.23 (1993). Decisions as to prudence
are to be based on facts known or which should have been known at the time the decision was
made. See Public Util. Comm'n v. Houston Lighting & Power Co., 715 S.W.2d 98, 109-10 (Tex.
App.--Austin 1986), rev'd in part on other grounds, 748 S.W.2d 439 (Tex. 1987), appeal dism'd,
488 U.S. 805 (1988). Further, in a fuel-reconciliation proceeding, the Commission is entitled to
"consider any evidence that is appropriate and in the public interest." PURA, § 43(g)(2)(B). The
Attorney General's determination that the transportation settlement agreement was in the public
interest is a contemporaneous decision by an impartial third party suggesting that the
transportation contract executed pursuant to the settlement agreement was prudent. We conclude
that the Attorney General's actions were a legally relevant consideration in determining whether
the take-or-pay provisions in the supply and transportation contracts were prudent. Accordingly,
we overrule point of error three. 

 In point of error two, TIEC argues that the Commission refused to exercise its
delegated authority; rather, it "completely disregarded the established criteria for evaluating
utilities' fuel expenditures after concluding that the Attorney General's execution of the Rail
Settlement Agreement reflected a determination that the Coal Transportation Agreement was `in
the public interest.'" TIEC contends that, but for Campbell's inappropriate reliance on the
Attorney General's action, she would have found the transportation contract imprudent and "there
would be no question that she and Commissioner Greytok formed a majority favoring a
disallowance for [Southwestern's] failure to make any attempt to obtain additional flexibility in
the coal contracts' take-or-pay provisions." 

 We have concluded above that the Attorney General's approval of the transportation
settlement agreement was a relevant factor in determining the prudence of Southwestern's actions. 
Campbell's statement that she was not inclined to "second guess" the Attorney General does not
indicate that she relied solely on the Attorney General's actions in reaching her decision that the
take-or-pay provision was prudent. Indeed, by substituting her amended statement in the order
on rehearing for her prior statement, which could have been construed to indicate a belief that the
actions of the Attorney General precluded the Commission from considering the prudence of the
settlement, Campbell made it clear that she was not delegating authority to the Attorney General;
rather, she was simply giving some weight to the fact that the Attorney General had considered
the settlement reasonable. The Attorney General's approval of the settlement was probative
evidence relevant to the issue of prudence, a factor to be determined in a fuel-reconciliation
proceeding. (2) We conclude that considering the Attorney General's actions as evidence of
prudence does not constitute an impermissible delegation of authority. Accordingly, we overrule
point of error two. 

 In point of error five, TIEC complains that the district court erred in refusing to
enter findings of fact and conclusions of law pursuant to TIEC's request. This argument lacks
merit. TIEC filed its suit for judicial review of the Commission's order on rehearing in the
district court pursuant to section 69 of PURA and section 19 of APTRA. Section 69 of PURA
entitles any party in a proceeding before the Commission to seek "judicial review under the
substantial evidence rule." Section 19 of APTRA governs a suit for judicial review "where the
law authorizes review under the substantial evidence rule" and provides six bases on which the
court can reverse or remand an agency's order. All six bases raise legal, not factual, errors. 
Because the district court is presented with questions of law only, the court, even if requested,
"need not file findings of fact and conclusions of law following rendition of judgment in an
administrative appeal." Texas-New Mexico Power Co. v. Texas Indus. Energy Consumers, 786
S.W.2d 795, 797 (Tex. App.--Austin 1990), rev'd on other grounds, 806 S.W.2d 230 (Tex. 1991);
see also Galveston Bay Conservation & Preservation Ass'n v. Texas Air Control Bd., 586 S.W.2d
634, 639 (Tex. Civ. App.-- Austin 1979, writ ref'd n.r.e.); Wylie Indep. Sch. Dist. v. Central
Educ. Agency, 488 S.W.2d 166, 168 (Tex. Civ. App.--Austin 1972, writ ref'd n.r.e.). 
Accordingly, we overrule TIEC's fifth point of error.





CONCLUSION


 Having overruled TIEC's points of error, we affirm the district court's judgment.



 

 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: June 30, 1993

[Do Not Publish]
1. We recognize that, as a general rule, Texas law prohibits a court from considering the
oral remarks or discussions of decisionmakers when reviewing an agency order. City of
Frisco v. Texas Water Rights Comm'n, 579 S.W.2d 66, 72 (Tex. Civ. App.--Austin 1979, writ
ref'd n.r.e.). An exception is recognized, however, where allegations of irregularities are at
issue. See Pedernales Elec. Coop., 809 S.W.2d at 341. Because TIEC asserts irregularities
in the agency order, we are entitled to consider such remarks.
2. Our interpretation of Campbell's statement is consistent with other comments she made
in the final orders hearing in connection with the order on rehearing. Campbell stated, "I
think my language and my concurrence has caused some problems with people and if I could
just change one sentence of my dissent. . . . I would just like to change thatand perhaps this
will help a little bit with TIEC to understand where I'm coming from . . . ."