**SOUTH CENTRAL BELL TELEPHONE COMPANY, Movant,**

v.

**UTILITY REGULATORY COMMISSION, and Steven L. Beshear, Attorney General, Respondents.**

Supreme Court of Kentucky.

Aug. 31, 1982.

Lively M. Wilson, Bruce F. Clark, John A. Bartlett, Stites, McElwain & Fowler, Louisville, for movant.

James D. Brannen, Asst. Atty. Gen., William M. Sawyer, Paul M. Cupp, Staff Attys., Public Service Com'n, Frankfort, for respondents.

## OPINION OF THE COURT

The primary issue on this appeal is the legality of the action of the Kentucky Utility Regulatory Commission [1] in penalizing a utility, in a rate application case, for alleged poor service to its customers. We rule that such action is illegal, and reverse the Court of Appeals.

On March 14, 1980, movant (Bell) filed an application with the Commission, pursuant to KRS Chapter 278, to increase the rates paid by Kentucky customers by a total of $71,000,000. Following extensive hearings and arguments, the Commission found that a reasonable rate of return on Bell's investment was 10.61%. However, the Commission, in its order, reduced the rate of return to 10.47%, solely because of alleged poor service by Bell, which was the issue of another pending case before the Commission. The effect of this ruling was to reduce the granted rate increase by $2,108,000. The reduction of the rate increase was described by the Commission's order as a "penalty."

Following the denial of the motion for a rehearing on the penalty question, Bell filed an action in the Franklin Circuit Court seeking an injunction against the Commission to prevent it from enforcing the penalty. The circuit court granted a permanent injunction against the Commission and the Court of Appeals reversed. Because of the important issue involved, we granted discretionary review.

On appeal, Bell argues: (1) that the action of the Commission, imposing a penalty for poor service in a rate case, violates the provisions of KRS Chapter 278; (2) that the action of the Commission in imposing the penalty in this particular case violated its right to due process of law; (3) that the application of the penalty was arbitrary, capricious and unreasonable; (4) that the application of the penalty was confiscatory; and (5) that the trial court did not act as a rate-making authority in granting the injunction.

## I. DID THE ORDER OF THE COMMISSION, WHICH IMPOSED A PENALTY FOR ALLEGED POOR SERVICE TO ITS CUSTOMERS IN A RATE APPLICATION CASE, VIOLATE THE PROVISIONS OF KRS CHAPTER 278?

In a special non-rate, adequacy-of-service proceeding, (identified as Case No. 7535), the Commission, on November 19, 1979, entered an order requiring Bell to provide telephone service to new applicants no later than twelve months following an application for such service. The basis of the order was the Commission's finding that Bell was either unable or unwilling to provide the type of service desired by its applicants. In effect, the order gave Bell a year to improve its service and to comply with the order.

Bell subsequently filed its present rate application (Case No. 7774), and the Commission rendered its decision on September 2, 1980. After determining that a reasonable rate of return on investment was 10.61%, the penalty was applied. The relevant portion of the order is as follows:

"Although the Commission finds that a rate of return on Net Investment of 10.61% is reasonable in this proceeding based on cost of capital considerations only, the *Commission also finds that the Company has failed to fulfill its service obligations in providing service to new Applicants within a reasonable time period.*" (Emphasis added.)

The order then referred to Case No. 7535 and stated that the Commission's order in that case had not achieved successful results. It then continued:

"Due to the inadequate progress the Company has made in providing new service to those applicants within a reasonable time period, the Commission finds that it is fully justified in reducing the approved fair, just and reasonable rate of return the Company has the opportunity to earn to 10.47%. *Such a penalty is*

1. Subsequent to the filing of this lawsuit, the General Assembly changed the name of the regulatory agency to Public Service Commission. For convenience, we will refer to the agency as the Commission.

*required based on the facts of this case in order to provide an incentive for the Company to improve its record in providing requested service within a reasonable time, as ordered in Case No. 7535."* (Emphasis added.)

The trial court, in considering Bell's petition for a permanent injunction enjoining the Commission from enforcing its penalty, ruled that the penalty violated the "letter and spirit" of KRS Chapter 278 by "unlawfully reducing a rate of return *not germane to the rate-making process."* (Emphasis added.) The trial court held that, under the statutes, the rate making procedures and the service enforcement procedures are separate and apart.

The Commission and the Kentucky Attorney General appealed to the Court of Appeals. That court reversed the trial court, thereby upholding the penalty. The Court of Appeals reasoned that since there is no specific statutory provision prohibiting the use of a penalty for poor service in a rate case, the Commission had, by implication, the necessary authority to use adequacy of service as a factor in a rate application case. We disagree.

There is no doubt that the Commission's order in the rate case imposes a penalty against the utility by reducing what the Commission found to be an adequate rate. The clear wording of the order shows that Bell was being punished because it had not complied with the Commission's previous order in Case No. 7535. A reduction of the rate increase totaling $2,108,000 is undoubtedly a severe penalty. It is a permanent reduction, with nothing in the order to indicate that the utility can have the original rate increase restored. During Bell's probable corporate existence, the penalty could result in a staggering sum.

We now examine the statutes to determine if such a procedure is authorized. KRS 278.030 sets out two basic goals to be achieved by the regulation of utilities by the Commission: viz, (1) that the companies shall receive adequate rates; and (2) that the companies shall furnish adequate service to its customers. It states:

*"Rates, classifications and service of utilities to be just and reasonable; service to be adequate.*

(1) Every utility may demand, collect and receive fair, just and reasonable rates for the services rendered or to be rendered by it to any person.

(2) Every utility shall furnish adequate, efficient and reasonable service, . . ."

The General Assembly has unequivocally allowed utilities to be fairly paid for their services, but has also placed an obligation on them to render reasonable service to its customers. The Commission is given the power to regulate utilities, which includes the power to set rates and service requirements. KRS 278.040(2) provides that, ". . . (T)he jurisdiction of the commission shall extend to all utilities in this state. The . . . utility regulatory commission shall have exclusive jurisdiction over the regulation of rates and service of all non-energy utilities."

KRS 278.260 provides that any directly interested persons, organizations, political bodies and others may complain about any rate that is unreasonable or unjustly discriminatory or any service that is inadequate or cannot be obtained.

KRS 278.260 gives the Commission responsibility and authority in the area of rates and services. However, rates and service are two distinct areas and, therefore, are subject to separate procedures, standards and remedies. KRS 278.270 deals with rates. It provides the Commission the authority to investigate and to prescribe just and reasonable rates. On the other hand, KRS 278.280 sets forth the procedure in dealing with service complaints.

Even more significantly, the General Assembly has specifically provided two separate remedies which may be used to enforce the Commission's orders concerning service-oriented problems. KRS 278.390 gives the Commission specific authority to compel obedience to its orders by ". . . (in) mandamus, injunctions or other proper proceeding in the Franklin Circuit Court." Thus, the court could use its normal contempt power

to enforce resulting judgments and orders. In addition, there are criminal penalties provided. KRS 278.990 provides a fine from $25 to $1,000 against any utility that is a private corporation which "... violates any of the provisions of KRS 278.010 to 278.450, or does any act therein prohibited, or fails to perform any duty imposed upon it under those sections for which no penalty has been provided by law, or fails to obey any lawful requirement or order of the Commission...." KRS 278.990(2) permits the Commission to institute the criminal proceedings under this section.

Clearly, the legislature has provided two effective vehicles to enforce its orders, including those that deal with adequacy of service. It is equally clear that the General Assembly omitted a specific provision allowing the Commission to enforce its service cases by a reduction in a rate case.

Although there is a paucity of authority on the specific question of whether rate reductions can be used to penalize utilities for poor service, it is clear that the legislative grant of power to regulate rates will be strictly construed and will neither be interpreted by implication nor inference. It will be strictly construed. 73 C.J.S., Public Utilities, § 41, p. 1080. In fixing rates, the Commission *must* give effect to all factors which are prescribed by the legislative body, but may not act on a matter which the legislature has not established, *id.*, Sec. 41, (c)(aa) p. 1093. We have held that the Commission's powers are purely statutory. *City of Olive Hill v. Public Service Commission*, 305 Ky. 249, 203 S.W.2d 68 (1947). When a statute prescribes a precise procedure, an administrative agency may not add to such provision. *Union Light, Heat & Power Co. v. Public Service Commission*, Ky., 271 S.W.2d 361 (1954).[2] We believe that granting the Commission the authori-

ty, in a rate case, to penalize the utility for poor service would be an improper extension of the statutory procedure.

The rate making process is to provide for the utility a reasonable profit on its operations so that its owners may achieve a return on their investment. Such matters are purely those of a financial nature.

In addition, we concur with the trial judge that the quality of service is not germane to the normal, time-tested factors that go into the determination of a proper rate for the services rendered by a utility.

It seems to us that there is an inherent danger in permitting poor service as a basis for setting rates, particularly in the imposition of a penalty which results in a reduction of a rate which the Commission has already found to be fair and reasonable. There are no objective, definable standards upon which to base a penalty. It is, at best, arbitrary and subjective. Punitive actions should not be subject to the possible whims of individuals, including those serving on a responsible administrative body. In the present case, it appears that the Commission was upset or frustrated by what it deemed Bell's failure to improve its service in a previous case. Such a reaction may be justified but it is difficult to reconcile Bell's possible failure with the imposition of a penalty that would cost the company tens of millions of dollars over the years. This case is a classic example of arbitrary and subjective judgment.

We are aware that public utilities, in many instances, give poor or less than adequate service. We are also aware that such action has properly been decried by our General Assembly. That selfsame General Assembly has provided two very quick and very effective remedies, at least one of which is purely punitive in nature, to remedy such situations.

2. In the case of *City of Lexington v. Public Service Commission*, Ky., 249 S.W.2d 760 (1952) (overruled on other grounds) the court, by way of *obiter dictum*, made reference to an argument made by the city that since the service of the utility was inadequate, a penalty rate should be applied. We said, "... (a)ssuming that under proper circumstances a penalty

rate might be invoked, we are of the opinion that the question of whether such a rate should be invoked is primarily one of regulatory policy to be determined by the Public Service Commission." The court assumed—*but did not decide* that a "penalty rate" could be invoked. This dictum, now overruled, is not precedent to sustain the action of the Commission.

We agree with the Florida Supreme Court when it ruled that, absent legislation to the contrary, the question of rates should be kept separate from the question of service.

"While the Legislature may have the power to change the law and provide for all such matters to be disposed of in one proceeding, it is beyond the power of the Commission to change the law. The Florida Railroad and Public Utilities Commission is a creature of the statute and has only such powers as have been granted to it by the Legislature.

The increase in rates affected the entire system. The complaint with reference to poor or inadequate service covered only about 15 percent of the entire system. The imposition of penalties is covered by sections of the statute different from those authorizing the fixing of rates and are based upon different theories. *Elyria Tel. Co. v. Public Utilities Commission*, 158 Ohio St. 441, 110 N.E.2d 59. The respondent-Commission had no authority to deny an increase in rates which it found to be just, by the means of inflicting a penalty because of poor or inadequate service, and exceeded its jurisdiction when it inflicted such penalty in a rate-making proceeding. If the service is poor or inadequate, the Commission may of its own motion, or upon the complaint of others, take appropriate action as provided by law." 70 So.2d at 510. *Florida Telephone Corp. v. Carter*, Fla., 70 So.2d 508 (1954).

We therefore conclude that the Commission acted beyond the scope of its statutory authority when, in a rate hearing, it imposed a rate reduction penalty against Bell for alleged poor service.

## II. DID THE TRIAL COURT ACT AS A RATEMAKER WHEN IT ENJOINED THE COMMISSION FROM USING SERVICE IN A RATE APPLICATION CASE?

Acting on a petition by Bell, the trial court permanently enjoined the Commission "... from enforcing those portions of its orders ... entered in Case No. 7774, which purpose to penalize South Central Bell Telephone Company for alleged service deficiencies by reducing its rate of return on Net Investments from 10.61% to 10.47%." The court specifically limited the injunction to the penalty provision of the Commission's orders, and further stated "... (T)his injunction ... does not adjudicate the question of whether a 10.61% rate of return on Net Investment is fair and reasonable."

The Commission argues that the granting of the injunction violates the standards set out in *Commonwealth Ex Rel. Stephens v. South Central Bell Telephone Company*, Ky., 545 S.W.2d 927 (1976). We do not agree. In that case, Bell obtained a temporary injunction in the circuit court restraining the Commission from enforcing its order which set a certain rate from which Bell could produce a fair and adequate return. The injunction suspended enforcement of the Commission's order, pending an appeal on the merits. In effect, the injunction permitted Bell to collect revenues at a higher rate during adjudication of the correctness of the Commission's rate determination. We dissolved the temporary injunction and ruled that a utility company is entitled to temporary relief only if in a final hearing there is a reasonable probability that it will succeed in proving that the rate set by the Commission is confiscatory. We determined that the factual record before the trial judge did not support such a finding.

In the case at bar, the issue decided by the court when it granted the permanent injunction was a legal one, not a factual one. The same issue, whether the Commission can in a rate case, penalize a utility for inadequate service, is the one we have decided here. We agree with the trial court that it is not legally proper for the Commission to take such action. The effect of the trial court's ruling and our decision is to abolish the penalty assessed against Bell, and to restore the rate originally awarded to Bell *by the Commission*.

We believe the situation in this case is analogous to that in *Kentucky Power*

*Company v. Energy Regulatory Commission*, Ky., 623 S.W.2d 904 (1981). In that case, the Commission had entered an order granting an increase in revenues of approximately $7,000,000. However, the actual rate increase ordered would have produced $4,000,000 less in actual revenue. We affirmed the judgment of the trial court which directed the Commission to permit the utility to charge rates which would, in fact, produce the $7,000,000 in revenue. Rejecting the argument that such action constituted improper "rate-making" by a court, we held:

> "(W)ith regard to the argument that the circuit court has entered the forbidden area of rate-making, it is important to bear in mind that rates are merely the means designed for achieving a predetermined objective, which in this instance was how much additional revenue should the Company be allowed to earn. That determination (was) made solely by the Commission and not in any degree or respect disturbed by the court....

> . . . .

> (I)t is to be observed that the circuit court did not set any rates or direct the Commission to authorize those submitted by the Company with its certificate showing the inadequacy of the rates fixed by the Commission." *Id.*, at 908.

In the present case, the *Commission* established a rate which, in its opinion, gave the utility a fair rate of return. It then assessed a penalty against the utility by reducing the rate granted. The circuit court ruled, and, again we agree, that such action is illegal because it violates the Kentucky statutory rate-making scheme. Our decision eliminates an illegal act of the Commission and reinstates the original rate determined *by the Commission*, and *not by the courts*. We conclude that the court's action is not rate-making.

Since we have declared the action of the Commission in applying the penalty illegal, the other issues raised by Bell are moot, and we need not address them in this opinion.

The decision of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

PALMORE, C. J., and AKER, CLAYTON, STEPHENS, STEPHENSON and STERNBERG, JJ., sitting.

All concur.

O'HARA, J., not sitting to avoid the appearance of impropriety since he had matters pending before movant Commission when appointed to this Court.