**MOUNTAIN FUEL SUPPLY COMPANY, Petitioner,**

v.

**PUBLIC SERVICE COMMISSION OF UTAH, Respondent.**

**No. 910051.**

Supreme Court of Utah.

Sept. 28, 1993.

Gary G. Sackett and Charles E. Greenhawt, Salt Lake City, for Mountain Fuel Supply.

R. Paul Van Dam, Atty. Gen., David S. Christensen, David L. Stott, Kent Walgren, and Laurie L. Noda, Asst. Attys. Gen., Salt Lake City, for Public Service Com'n and intervenors Div. of Public Utilities, Committee of Consumer Services, Utah Energy Office.

ZIMMERMAN, Justice:

Mountain Fuel Supply Company ("Mt. Fuel") petitions for review of a Public Service Commission ("Commission") order dat-

ed November 21, 1990, establishing new rates and charges for natural gas delivery in Utah. Mt. Fuel challenges (i) the Commission's decision to use "an historical test year" to determine the utility's new rates; (ii) its refusal to admit evidence of "a future test year"; (iii) its refusal to make adjustments based on information obtained after the historical test year; (iv) its use of an average rate base rather than a year-end rate base; and (v) its decision to reduce Mt. Fuel's authorized rate of return on the shareholders' equity. Under the relevant standards of review for agency decisions, we hold that the Commission has not committed reversible error in making any of these determinations. However, because we cannot discern the basis for the Commission's decision to reduce the rate of return by the quantity it did, we remand so that the Commission may explain its reasoning and make any necessary findings of fact.

The Commission is charged with setting the rates for Mt. Fuel, a natural gas public utility. The Commission must establish rates that are "just and reasonable" through formal adjudication. Utah Code Ann. § 54–7–12(2)(b); *see id.* § 54–3–1. On October 31, 1989, the Commission notified Mt. Fuel that it was commencing an investigation into the utility's rates and ordered it to attend a prehearing conference.

The prehearing conference was held on November 7, 1989. Before allowing any discussion, the Commission declared its intent to use an historical test year, specifically, the 1989 test year, to establish new rates for the utility.[1] While recognizing that the use of an historical test year was "a significant issue," the Commission reasoned that its decision was supported by "precedent" because it had used or was using an historical test year in two other rate-making cases. The Commission also noted that although it had used a future test year in past rate-making proceedings

---

1. The "test year" refers generally to the 12-month period over which a utility's operations, costs, revenues, and investment are analyzed to determine new rates. An historical test year relies on events that have been concluded and recorded. A future test year relies on projections. *See* Keith M. Howe & Eugene F. Rasmussen, *Public Utility Economics and Finance* 70–72 (1982) [hereinafter Howe & Rasmussen].

involving Mt. Fuel, an historical test year was justified because there was "less[ ] inflation" and "less pressure on rates" than in the past. Finally, the Commission noted that the choice of a test year was a policy decision committed to its discretion by Code section 54–4–4(3). Nonetheless, the Commission ordered a hearing to allow Mt. Fuel to argue for the use of a future test year.

On November 21, 1989, the test-year issue came before the Commission. Mt. Fuel argued that the Commission should use a future test year because it would better approximate the rate-effective period [2] than an historical test year. Mt. Fuel offered to submit evidence of both test years, stating that the evidence would show that a future test year "makes more sense" given "a full presentation and ... analysis." However, Mt. Fuel admitted that it did not know "which of the two would give higher or lower answers." Although both the Utah Division of Public Utilities ("Division") and the Committee of Consumer Services ("Committee") [3] agreed that some evidence should be taken on the test-year issue, the Commission ruled that it would not take any evidence on the matter and would use the 1989 historical test year. The Commission did not provide any rationale other than suggesting that "dueling models" would consume too much "regulatory time." Before the hearing closed, the Commission said that it was taking official notice of the previous five years' budget filings made by Mt. Fuel and the Division and of the rate of inflation for the last five years.

On March 31, 1990, Mt. Fuel petitioned the Commission for rate relief, arguing that the Commission at least should use a 1989 year-end rate base [4] and should make a number of adjustments to the test year to account for various changes in the company's operations since 1989. Following a number of evidentiary hearings, the Commission issued an order on November 21, 1990, setting Mt. Fuel's rates for the period beginning December 1, 1990. In setting the rates, the Commission relied on the 1989 historical test year, did not make any of the proposed post–1989 adjustments, and used an average rate base rather than the year-end rate base. The Commission also reduced Mt. Fuel's authorized rate of return on equity from 12.2% to 12.1%. Mt. Fuel petitioned for a rehearing, which the Commission denied. Mt. Fuel now seeks review of the Commission's order.

We view Mt. Fuel's challenge as comprising five distinct claims, which we address in the following order: First, we consider Mt. Fuel's attack on the Commission's decision to use a 1989 historical test year. Second, we address Mt. Fuel's related contention that the Commission improperly refused the company's proffer of future-test-year data. Third, we consider whether the Commission erred in refusing to make adjustments to the historical test year based on post–1989 data. Fourth, we turn to Mt. Fuel's argument that the Commission's decision to use an average rather than a year-end rate base is not supported by the evidence. Finally, we address the company's claim that the Commission's decision to reduce the rate of return on equity is not within the Commission's statutory power

2. The rate-effective period is the period during which the new rates would be in effect. At the time of the November proceedings, the rate-effective period was unknown. However, given the time of the filing, the earliest the rates were likely to become effective would be about December 1, 1990, the expiration of the 240–day limit imposed on final Commission action by section 54–7–12(3)(b) and (c). Utah Code Ann. § 54–7–12(3)(b), (c).

3. The Division is charged with, inter alia, representing the public interest before the Commission, investigating rate cases, making policy recommendations to the Commission, and investi-

gating compliance with Commission orders. Utah Code Ann. § 54–4a–1. The Committee "was created by the Legislature to serve as 'advocate ... of positions most advantageous to a majority of residential consumers.'" *MCI Tele. Corp. v. Public Serv. Comm'n*, 840 P.2d 765, 767 (Utah 1992) (quoting Utah Code Ann. § 54–10–4(3)); *see also Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 604 n. 2 (Utah 1983).

4. Rate base is the investment base on which a utility is entitled to earn a return. *See* Howe & Rasmussen at 88.

and, in the alternative, is unsupported by the evidence.

We first state the standard of review. The parties agree that the Utah Administrative Procedures Act ("UAPA") governs the present case. Utah Code Ann. §§ 63–46b–1 to –22; *see MCI Tele. Corp. v. Public Serv. Comm'n,* 840 P.2d 765, 770 (Utah 1992). The UAPA provides in relevant part:

(4) The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:

. . . . . ;

(e) the agency has engaged in an unlawful procedure or decision-making process, or has failed to follow prescribed procedure;

. . . . . ;

(g) the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court;

(h) the agency action is:

(i) an abuse of the discretion delegated to the agency by statute;

(ii) contrary to a rule of the agency;

(iii) contrary to the agency's prior practice, unless the agency justifies the inconsistency by giving facts and reasons that demonstrate a fair and rational basis for the inconsistency; or

(iv) otherwise arbitrary or capricious.

Utah Code Ann. § 63–46b–16(4). We will apply the pertinent UAPA standard as appropriate.

Before turning to Mt. Fuel's claims, we first address the Commission's argument that the appeal in this case is moot. The Commission points out that Mt. Fuel has not requested that we remand the case to require the Commission to consider a specific future test period and that the 1991 future test year sought by Mt. Fuel in the proceedings below has now passed. Thus, the Commission contends, the dispute over the appropriate test year is moot and Mt. Fuel's appeal is simply a request for an advisory opinion, which is generally disfavored by this court. *See McRae v. Jackson,* 526 P.2d 1190, 1191 (Utah 1974). Therefore, the Commission concludes, we should refuse to address the issue of the appropriate test year and any related questions.

We decline the Commission's suggestion. In *Wickham v. Fisher,* 629 P.2d 896 (Utah 1981), this court recognized an exception to the mootness rule when the issue "is of wide concern, affects the public interest, is likely to recur in a similar manner, and, because of the brief time any one person is affected, would otherwise likely escape judicial review." *Id.* at 899 (citations omitted). For the reasons discussed below, the instant case meets all four criteria.

To consider whether the *Wickham* criteria are met here, we must first determine the nature of the Commission's decision regarding the test-year issue. The Commission's decision to use the 1989 historical test year was essentially the result of two discrete administrative actions. The first action was a policy decision to create a presumption in favor of using an historical test year in all future rate-making proceedings. The second was the application of this policy to Mt. Fuel's case.

Our characterization of the Commission's first action as the creation of a presumption favoring an historical test year is dictated by the proceedings before the Commission and the Commission's final order. At the November 7, 1989, prehearing conference, before any discussion the Commission announced that it intended to use an historical test year. It explained that its decision was based, in part, on the fact that it had used or was using an historical test year in two other rate-making cases. The Commission nonetheless invited the parties to show why another test year would be more appropriate and scheduled a hearing to air that issue. At the November 21, 1989, hearing, Mt. Fuel presented its argument detailing why the Commission should use a future test year. There is no evidence before us to suggest that the Com-

mission would not have adopted a future test year if the company had argued successfully that the future test year would have better approximated the rate-effective period. De facto, the Commission adopted the historical test year as a rebuttable presumption.

The Commission's final order supports this view:

> In future proceedings, the Commission will decide issues concerning test year, rate base, out-of-period adjustments, and related matters, prior to the onset of [the] hearings and based on the then existing conditions of the utility and the economy in which it is operating.

This statement, taken in context, indicates that an historical test year will be preferred as a matter of general regulatory policy. And although it implies that the Commission will always use an historical test year for future rate making, we think it is fair to assume that the Commission will use a future test year when warranted by existing economic conditions. Indeed, in its brief to this court, the Commission characterized its approach as creating a "normal or default test period."

■ Because the Commission's presumption in favor of using an historical test year was not promulgated as a formal rule but constitutes a policy decision of broad application, it is an informal rule or interpretive guideline. *See Gray v. Department of Employment Sec.*, 681 P.2d 807, 815 (Utah 1984). We have recognized that the creation of interpretive guidelines is a legitimate administrative practice. *See Salt Lake Citizens Congress v. Mountain States Tel. & Tel. Co.*, 846 P.2d 1245, 1252–53 (Utah 1992); *see also SEMECO v. State Tax Comm'n*, 849 P.2d 1167, 1172–74 (Utah 1993) (Durham, J., dissenting). Of course, certain agency decisions setting policy must be made by formal rule making. *See, e.g.*, *Williams v. Public Serv. Comm'n*, 720 P.2d 773, 776–77 (Utah 1986). In the instant case, however, Mt. Fuel does not claim that the Commission should have promulgated its preference for using an historical test year as a formal rule.

■ Understood as an interpretive guideline, the commission's decision to use an historical test year as a rebuttable presumption easily meets the *Wickham* criteria to avoid a mootness challenge. Obviously, the decision "is of wide concern, affects the public interest, [and] is likely to recur." *Wickham*, 629 P.2d at 899. The decision also is "likely [to] escape judicial review" because a future test year sought by a utility may come and go before an appellate court may review the Commission's decision to reject the future test year. *Id.* Therefore, we hold that the present appeal is properly before us.

We now reach Mt. Fuel's claims. We treat its challenge to the Commission's decision to use the 1989 historical test year as comprising two general complaints, one challenging the adoption of the historical-test-year presumption and the other challenging its application. We first address Mt. Fuel's challenge to the Commission's adoption of the historical-test-year presumption. Specifically, Mt. Fuel argues that the Commission's decision is not supported by substantial evidence, Utah Code Ann. § 63–46b–16(4)(g), and is a change in prior practice not supported by "a fair and rational basis." *Id.* § 63–46b–16(4)(h)(iii).

■ Turning first to the claim that the interpretive guideline favoring an historical test year is not supported by substantial evidence, we conclude that Mt. Fuel cannot rely on this particular ground for relief in challenging the guideline. An interpretive guideline is the agency's informal interpretation of a statute or formal rule. *See Gray*, 681 P.2d at 815–16; *see also* Kenneth C. Davis, *Administrative Law of the Eighties* § 7:5, at 235 (1989). As such, it is essentially a legal or policy determination. *See Gray*, 681 P.2d at 815. Although the guideline may have been adopted with certain factual scenarios in mind, the adopting agency typically does not look to the evidence before it, nor does it need to. Because section 63–46b–16(4)(g) restricts the substantial evidence inquiry to situations in which "the agency action is based upon a determination of fact," this ground for re-

lief cannot be invoked to mount a facial challenge to an interpretive guideline.

■ As for Mt. Fuel's contrary-to-prior-practice argument, it fails on the merits. Section 63–46b–16(4)(h)(iii) permits relief from agency action that is "contrary to the agency's prior practice" unless the agency "giv[es] facts and reasons that demonstrate a fair and rational basis for the inconsistency." At the November 7th hearing, the Commission admitted that its prior practice had been to use a future test year when setting rates for Mt. Fuel. However, we think that the Commission gave both facts and reasons demonstrating a fair and rational basis for adopting the historical-test-year presumption.

The Commission also noted at the November 7th hearing that the choice of test year was a policy decision within its discretion, a proposition that Mt. Fuel does not contest. More importantly, the Commission indicated that although a future test year is appropriate when interest rates and inflation are unstable, an historical test year is appropriate in the instant case because interest rates and inflation are relatively static. These grounds were more formally adopted at the November 21st hearing, in which the Commission stated that it was taking official notice of Mt. Fuel's budget filings and the rate of inflation over the last five years. *See* Utah Code Ann. § 63–46b–8(1)(b)(iv).

At the November 21st hearing, the Commission also stated that it was using an historical test year as a standard regulatory approach to increasing bureaucratic efficiency. The Commission explained that a standardized approach would avoid lengthy evidentiary hearings regarding the most appropriate test year. The final order reflected this decision: "[I]n future proceedings, the Commission will decide issues concerning test year ... based on the then existing conditions of the utility and the economy in which it is operating." The Commission reasoned: "Actual historical data has the advantages of simplicity and accountability. In general, such data can be used for rate case analysis, thereby minimizing the use of forecasted data derived by technical and debatable methods."

Also in the final order, the Commission noted that Mt. Fuel had not had a major rate proceeding since 1985, which it commented was "unusual" and "undesirable." The Commission stated that using an historical test year would better allow it to learn the actual circumstances of a utility that it "had not thoroughly examined for some years."

In sum, we hold that the foregoing is more than adequate to provide a fair and rational basis for the. Commission's decision. Our conclusion is buttressed by the fact that the Commission adopted an historical test year only as a presumption. Mt. Fuel was free—indeed, encouraged—to convince the Commission that a future test year would be more appropriate.

■ Mt. Fuel argues, however, that the record is devoid of any evidence supporting the Commission's reasoning to use an historical test year rather than a future test year. For example, it asserts that the record contains no indication of the actual inflation rate, how it has changed over time, or how a standardized approach to the test-year issue would result in a standardized approach to the test-year issue would result in a more manageable and less burdensome proceeding. This argument asks too much. First, interpretive guidelines, especially flexible ones such as the Commission's *presumption* in favor of using an historical test year, do not need to be supported by the same quantum of reasoning and evidence that a formal rule requires. *See ,Gray,* 681 P.2d at 815–16; *cf.* Dave Frohnmayer, *National Trends in Court Review of Agency Action: Some Reflections on the Model State Administrative Procedure Act and New Utah Administrative Procedure Act,* 3 B.Y.U. J. Pub.L. 1, 6 (1989) ("Many of the theoretical values of the administrative process—speed, efficiency, superior expertise and flexibility—can be lost if the quasi-legislative process is fossilized by excessive overlays of required procedure.").

Second, and perhaps more importantly, we do not think that the reasoning underlying the Commission's interpretive guideline favoring an historical test year is unsound.[5] Mt. Fuel admits, as it must, that the legislature has granted the Commission discretion under the public utility code to choose the appropriate test year. Utah Code Ann. § 54–4–4(3).[6] However, Mt. Fuel does not point to anything in the record that undermines the grounds relied on by the Commission in establishing an interpretive guideline favoring the use of an historical test year.

On a more fundamental level, Mt. Fuel argues that the Commission must choose the test year that is "as nearly representative of future conditions as possible." *Utah Dep't of Business Reg. v. Public Serv. Comm'n,* 614 P.2d 1242, 1248 (Utah 1980). From this principle, Mt. Fuel apparently contends that the commission cannot establish a presumption in favor of an historical test year and, for each rate-making proceeding, must make factual findings demonstrating that the test year chosen approximates the rate-effective period better than any other. We agree that one of the fundamental goals of rate making is to select a test year that reasonably approximates the rate-effective period.

*Utah Dep't of Business Reg.,* 614 P.2d at 1248; *see City & County of San Francisco v. Public Util. Comm'n,* 39 Cal.3d 523, 217 Cal.Rptr. 43, 49, 703 P.2d 381, 387 (1985) (en banc); *L.S. Ayres & Co. v. Indianapolis Power & Light Co.,* 169 Ind.App. 652, 351 N.E.2d 814, 828–29 (1976). However, we see no reason why the Commission cannot adopt an historical-test-year presumption and still reach this goal.[7] Moreover, Mt. Fuel has not cited, nor have we found any authority supporting, an argument that such a presumption somehow undermines this goal.[8]

We now consider the Commission's application of the historical-test-year presumption to Mt. Fuel's case. Mt. Fuel claims that the Commission acted arbitrarily and capriciously, engaged in an unlawful procedure, and violated the company's due process rights in refusing its proffer of the future-test-year data. The Commission argues that it properly excluded the evidence because Mt. Fuel had failed to explain "how and in what degree the use of projected data as opposed to actual data would [change] the Company's revenue requirement or rates ultimately arrived at by the Commission."

We agree with the Commission that Mt. Fuel failed to establish the relevance of

5. The standard of review under the UAPA for an agency's interpretive guidelines is unclear. Because the parties have not briefed the issue and our own research suggests no clear answer, we do not at this time attempt to set the appropriate standard. We note only that even under the UAPA's most rigorous standard for review of agency policy determinations, we find the Commission's rationale to be sufficient.

6. Section 54–4–4(3) states, "The commission, in its determination of just and reasonable rates, *may* consider recent changes in the utility's financial condition ... and *may* adopt an appropriate future test period." Utah Code Ann. § 54–4–4(3) (emphasis added). The legislature added this provision in 1975. 1975 Utah Laws ch. 166, § 1. Prior to that time, the Commission used an historical test year in all rate-making proceedings similar to that at issue here. The legislative history with respect to the 1975 change is sparse, but it appears that the change was made to allow the Commission to better take into account high inflation and rapidly increasing costs. This suggests that the legislature envisioned that the Commission would apply an historical test year, as was tradi-

tional practice, unless the Commission determined that economic conditions called for the use of a future test year.

7. Public service commissions traditionally have used historical test years, and the use of historical test years predominates today. *See* Howe & Rasmussen at 71. This is not surprising; as Justice Cardozo wrote in 1935, "[P]rophecy, however honest, is generally a poor substitute for experience." *West Ohio Gas Co. v. Public Util. Comm'n,* 294 U.S. 79, 82, 55 S.Ct. 324, 325, 79 L.Ed. 773 (1935).

8. The authorities Mt. Fuel cites stand only for the proposition that a public service commission cannot rely on a particular test year as an exclusive standard when the evidence shows that another test year would better approximate the rate-effective period. *See, e.g., West Ohio Gas Co.,* 294 U.S. at 81–82, 55 S.Ct. at 325. As we have explained in the text, the Commission's presumption in favor of using an historical test year is only that—a presumption.

the proffered evidence. At the November 21st hearing, Mt. Fuel offered to submit both historical- and future-test-year data, stating that the two filings would "give the Commission every opportunity to decide what is the appropriate representative test year." Mt. Fuel did not attempt to argue why a future test year would better approximate the rate-effective period than an historical test year, commenting only that "we *believe* that we can show that what makes more sense is ... a projected year." (Emphasis added.) Indeed, Mt. Fuel expressly disavowed having any knowledge regarding what the evidence would in fact establish: "[T]he Company doesn't know even now which of the two would give higher or lower answers...."

Mt. Fuel argues that as a matter of public utility law, the Commission should have allowed it to put on the future-test-year evidence. Otherwise, we would be "impos[ing] on a utility seeking rate relief an impossible standard of evidentiary prescience that has no basis in law." This argument is unfounded.

First, Mt. Fuel cites to no legal authority supporting its position, nor does it explain why it would be "impossible" for it to show, short of putting on the evidence, that the use of a future test year would better approximate the rate-effective period. Under the UAPA, the Commission has discretion to exclude "irrelevant, immaterial, or unduly repetitious" evidence. Utah Code Ann. § 63–46b–8(1)(b)(i); *see also* Utah R.Evid. 403. We see no reason why this discretion should be any more constrained in this context than in other administrative proceedings. It seems to us that, at a minimum, the utility could take the information for the two models, calculate the rates and revenue requirements generated by each model, and inform the Commission of the difference. This would at least alert the Commission that the models result in different rates. The utility also could summarize for the Commission the comparative strengths and weaknesses of each model in relation to the economy and the needs of the company.

Second, as Mt. Fuel recognizes, a basic tenet of public utility law is that the utility has the burden of establishing "just and reasonable" rates. *Utah Dep't of Business Reg.*, 614 P.2d at 1245. It would be inconsistent with this tenet to allow a utility to force the Commission to engage in an analysis of two rate-making models when the utility itself does not have any idea what such an analysis will actually produce.

Third, for a reviewing court to grant relief under the UAPA, it must determine that the party has been "substantially prejudiced" by the complained-of agency action. Utah Code Ann. § 63–46b–16(4). In other words, we must be able to determine that the alleged error was not harmless. *See Morton Int'l, Inc. v. Auditing Div.*, 814 P.2d 581, 584 (Utah 1991). Thus, the aggrieved party must be able to demonstrate how the agency's action has prejudiced it. *Cf. id.* at 584 n. 3 (noting that section 63–46b–16(4) is patterned after the Model State Administrative Procedure Act provision that "requires the showing of substantial prejudice for an appellate court to grant relief"). In the instant case, nothing in the record indicates that the Commission's rejection of Mt. Fuel's proffer, even if in error, substantially prejudiced the utility. Applying our traditional harmless error formulation, we simply cannot say that the Commission's decision to preclude the future-test-year evidence—assuming it was incorrect—undermines our confidence in the outcome. *See, e.g., Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 796–97 (Utah 1991).

Finally, the doctrine of exhaustion of administrative remedies may require Mt. Fuel to demonstrate the relevancy of the excluded evidence. In general, a party must exhaust its administrative remedies as a prerequisite to seeking judicial review. *See* Utah Code Ann. § 63–46b–14(2); *S & G, Inc. v. Morgan*, 797 P.2d 1085, 1087 (Utah 1990); *State Tax Comm'n v. Iverson*, 782 P.2d 519, 524–25 (Utah 1989). Underpinning this doctrine is the principle that before an error is considered on appeal, an agency should have the opportuni-

ty to correct it. *See, e.g., Iverson,* 782 P.2d at 524–26; *Pacific Intermountain Express Co. v. State Tax Comm'n,* 7 Utah 2d 15, 19, 316 P.2d 549, 552 (1957). If a party does not *attempt* to establish the relevancy of evidence it seeks to introduce but is allowed on review to challenge the agency's decision finding that evidence irrelevant, this principle is abridged. *Cf. Southland Corp. v. Industrial Comm'n,* 23 Utah 2d 94, 96–97, 458 P.2d 630, 632 (1969) (recognizing rule that petition for rehearing based on new evidence must be supported by proffer detailed enough to give agency opportunity to correct itself). This is particularly true when the agency's expertise would allow it to gauge the significance of the proffered evidence better than a reviewing court. As we said in *Union Pacific Railroad v. Structural Steel & Forge Co.,* 9 Utah 2d 318, 344 P.2d 157 (1959), "In cases raising issues of fact not within the conventional experience of judges ..., the agencies created by the legislative branch for regulating the subject matter should first be heard." *Id.* at 318, 344 P.2d at 158.

 Mt. Fuel argues that requiring it to show the significance of the proffered evidence is inconsistent with "the character of rate-making as a legislative function." Although we agree that rate making is largely a legislative function, *Utah Dep't of Business Reg.,* 614 P.2d at 1250, this does not entitle the utility to present whatever evidence it wishes without having at least some firm idea of what it will show. On the other hand, if a utility makes a sufficient proffer, the Commission would be obligated to accept the evidence and make the necessary factual findings. Such a showing could be made, for example, by demonstrating that the proffered data would result in a significant difference in rates. After such a showing, the Commission should accept the evidence.

In short, Mt. Fuel wanted to prepare its case at the same time it presented it. The Commission acted well within its discretion in refusing to invest its time in such an endeavor. *See* Utah Code Ann. § 63–46b–8(1)(b)(i).

Mt. Fuel also argues that the Commission unlawfully refused to make post–1989 adjustments to the historical test year. The Commission's final order recites seven post-test-year adjustments proposed by Mt. Fuel. Based on the evidence before it, the Commission determined that the effect of these adjustments "would be a small increase in test period revenues and a much larger increase in test period expenses." Nonetheless, the Commission rejected the company's proposed adjustments because they "almost certainly [would] upset the test-year match of revenues, expenses, and investment." It is implicit in the Commission's order that it also found that post-test-year adjustments were not required to reasonably approximate future circumstances.

Mt. Fuel essentially contends that the Commission erred in refusing to adopt the post–1989 adjustments because the Commission did not make any findings showing that the unadjusted historical test year would better approximate the rate-effective period than an adjusted one. Mt. Fuel makes this argument as part of its general claim that the Commission's decision to use the 1989 historical test year is not supported by substantial evidence. We have already ruled on this issue with respect to the Commission's decision to adopt the guideline favoring an historical test year and the guideline's application to Mt. Fuel's case. However, we have not considered Mt. Fuel's lack-of-substantial-evidence claim with respect to the Commission's decision to use an unadjusted 1989 historical test year in the face of the post–1989 evidence Mt. Fuel put before it.

 To the extent that Mt. Fuel's challenge to the decision rejecting the post-test-year adjustments is meant to be a claim that the decision was not based on substantial evidence, such an attack fails because Mt. Fuel has not marshaled the evidence supporting the Commission's decision. Under the UAPA, the aggrieved party "must marshal all of the evidence supporting the findings and show that despite the supporting facts, the [agency's] findings are not supported by substantial evi-

dence." *First Nat'l Bank of Boston v. County Bd. of Equalization,* 799 P.2d 1163, 1165 (Utah 1990); *accord Hales Sand & Gravel, Inc. v. Audit Div.,* 842 P.2d 887, 893 (Utah 1992). In its briefs to this court, Mt. Fuel cites only the Commission's final order and neglects to cite any of the evidence contained in the paginated record, which is nearly 3,000 pages long. However, the order itself indicates that evidence was presented that supported the Commission's rejection of the post–1989 adjustments. For example, the Committee presented testimony showing that post-test-period adjustments were not necessary to approximate future circumstances.

▆ To the extent that Mt. Fuel's challenge is to the reasonableness of the Commission's decision to use an unadjusted test year, the company's claim also fails. We already have rejected Mt. Fuel's claims that the Commission improperly adopted an historical test year. From this basis, we cannot say that the Commission's decision not to adjust the historical test year was unreasonable. We are persuaded by the Commission's rationale that making selective post-test-year adjustments to the historical test year chosen would result in a mismatching of revenues, expenses, and investment. Perhaps more importantly, Mt. Fuel failed to argue, much less show, that its proposed post-test-year adjustments would not result in such a mismatch. In sum, Mt. Fuel's challenge to the Commission's decision rejecting the post-test-year adjustments and using an unadjusted test year fails.

In a closely related argument, Mt. Fuel claims that the Commission improperly used an average rate base rather than a year-end rate base to calculate the value of the company's assets for the purpose of determining the authorized rate of return. Mt. Fuel made its rate filing on the basis of the value of the company's rate base on December 31, 1989, the last day of the 1989 historical test year. However, the Commission adopted an average rate base for the test year, that is, the average value of the rate base over 1989. The Commission reasoned that (i) it had used this methodology in the most recent U.S. West Communications and Utah Power & Light Company rate cases; (ii) an average rate base allows matching of revenues and expenses, whereas the year-end rate base creates a potentially misleading picture of the rate base at one point; and (iii) the use of a year-end rate base requires substantial, difficult adjustments to revenues and expenses.

Mt. Fuel argues that these reasons, individually or in concert, are insufficient to support the Commission's decision to use an average rate base. Again, Mt. Fuel primarily relies on the theme that there must be substantial evidence showing that the selected test year—calculated using an average rate base—best models the rate-effective period.

In response, the Commission contends that even if it had improperly ordered an average rate base, Mt. Fuel has not shown substantial prejudice as required by section 63–46b–16(4) of the UAPA. This provision allows courts to grant relief "only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced" by the complained-of action. Utah Code Ann. § 63–46b–16(4). In its brief, the Commission demonstrated that its use of an average rate base rather than a year-end base resulted in $148,290 in *additional* revenue.

▆ We agree with the Commission that this increase belies a showing of substantial prejudice.[9] Mt. Fuel makes no attempt to dispute the Commission's calculations or to explain how the company is substantially prejudiced by an increase in revenue. Nor do we see any obvious basis

9. Mt. Fuel admits that the decision as to the appropriate rate base, like that for the appropriate test year, is basically a policy decision committed to the Commission's discretion. However, here, unlike the Commission's rejection of future-test-year data, the Commission had taken evidence as to the year-end rate base. Having done so, the Commission made certain factual findings to support its decision to use an average rate base, findings which Mt. Fuel now contests. For the reason stated in the text, we need not reach Mt. Fuel's lack-of-substantial-evidence argument because we find any error harmless.

in the record for determining that Mt. Fuel would be substantially prejudiced. Consequently, even if the Commission erred in using an average rate base, we are not permitted to grant relief on this ground. *See Morton Int'l, Inc.*, 814 P.2d at 584.

Mt. Fuel's final argument is that the Commission erred in setting the authorized rate of return on equity at 12.1%. The Commission found that Mt. Fuel's "cost of equity" was 12.2%. However, the Commission ordered the rate of return on equity to be 12.1%, a rate it determined to be just and reasonable. The Commission explained:

> There are reasons why the cost of equity obtained from a model may differ from a fair rate of return allowance. Where we wish to compensate for outstanding management performance, or to provide an incentive for efficiency, or to compensate for extraordinary risk, we can do so by setting a return greater than the minimum cost of equity. The converse of this is also true. We can adjust where we have reason to believe management has not adequately met its public service obligations.

The Commission's concern centered on Mt. Fuel's corporate relationships with its parent, Questar Corporation, and certain affiliates from which it received various goods and services. Evidence was presented suggesting that these relationships resulted in overinflated costs and created an undue risk to Mt. Fuel and its customers. Accordingly, the Commission established the lower rate of return to encourage Mt. Fuel to modify its corporate relationships.

Mt. Fuel assails the Commission's decision on two grounds. First, it argues that the Commission is not statutorily authorized to lower the rate of return as a penalty against a utility for its relationship with an affiliate company. Second, it contends that even if the Commission had such authority, there is no evidence showing that its affiliate relationships actually resulted in mismanagement or that the 0.1% reduction in the rate of return is an appropriate measure to correct any such mismanagement. We examine each argument in turn.

As a threshold matter, we note that Mt. Fuel does not claim that the Commission's decision to lower the authorized rate of return was confiscatory or in any way violated the United States or the Utah Constitution. Rather, Mt. Fuel's primary argument is that the Commission's decision is not authorized by Utah statutory or case law. We agree with Mt. Fuel that the Commission does not have any inherent regulatory powers. *See Kearns–Tribune Corp. v. Public Serv. Comm'n*, 682 P.2d 858, 859 (Utah 1984). However, we think that the legislature has granted the Commission discretion to set a utility's rate of return so long as it is within a range of reasonableness.

We reach this conclusion for several reasons. First, although the public utility code does not specifically mention the Commission's powers with respect to the rate of return, it does give the Commission discretion to consider a host of factors in establishing a utility's just and reasonable rates. Section 54–3–1 provides:

> All charges made ... by any public utility ... for any product or commodity furnished or to be furnished, or for any service rendered or to be rendered, shall be just and reasonable.... *Every public utility shall furnish, provide and maintain such service, instrumentalities, equipment and facilities as will promote the safety, health, comfort and convenience of ... the public, and as will be in all respects adequate, efficient, just and reasonable.* The scope of [the] definition "just and reasonable" may include, *but shall not be limited to,* the cost of providing service to each category of customer, economic impact of charges on each category of customer, and on the well-being of the state of Utah; methods of reducing wide periodic variations in demand of such products, commodities or services, and means of encouraging conservation of resources and energy.

Utah Code Ann. § 54–3–1 (emphasis added). The Code also grants the Commission considerable power in exercising this ratemaking authority:

The commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in this state, and to supervise all of the business of every such public utility in this state, and *to do all things, whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise of such power and jurisdiction....*

*Id.* § 54–4–1 (emphasis added).

In our view, these provisions grant the Commission broad discretion in setting the rate of return on equity. *Cf. Kearns–Tribune Corp.,* 682 P.2d at 860 (noting Commission's "broad supervisory powers in relation to rates"). The primary substantive limitation on the Commission's authority is that it cannot establish a rate of return that is insufficient to assure confidence in the financial integrity of the utility, such that it would undermine its credit and capital. *See Federal Power Comm'n v. Hope Natural Gas Co.,* 320 U.S. 591, 603, 64 S.Ct. 281, 288, 88 L.Ed. 333 (1944); *Bluefield Water Works & Improvement Co. v. Public Serv. Comm'n,* 262 U.S. 679, 692–93, 43 S.Ct. 675, 678–79, 67 L.Ed. 1176 (1923). We think, however, that the Commission may reduce the rate of return as a method to prompt the utility to correct mismanagement and inefficiency without running afoul of this rule or any other restrictions that have been brought to our attention. *See, e.g., In re Kauai Elec. Div. of Citizens Utils. Co.,* 60 Haw. 166, 590 P.2d 524, 542 (1978); *North Carolina ex rel. Utils. Comm'n v. General Tel. Co.,* 285 N.C. 671, 208 S.E.2d 681, 686–88 (1974); *In re General Tel. Co.,* 37 Pub. Util.Rep.4th 127 (Cal.Pub.Serv.Comm'n 1980).

Mt. Fuel points to several cases holding that a public service commission has no authority to decrease a utility's rate of return on equity as a penalty for mismanagement. It especially relies on *South Cent. Bell Telephone Co. v. Utility Regulatory Commission,* 637 S.W.2d 649 (Ky. 1982), and *Public Utility Commission v. Houston Lighting & Power Co.,* 715 S.W.2d 98 (Ct.App.1986), *aff'd in part & rev'd in part,* 748 S.W.2d 439 (Tex.1987). These cases are readily distinguishable. First, the governing provisions of the Utah Public Utility Code appear to grant discretion to the Commission to consider a broader range of factors in determining just and reasonable rates than the analogous Kentucky and Texas provisions in effect at the time those cases were decided.[10] Second, the Commission in this case found that the reduced rate of return was just and reasonable, a conclusion that Mt. Fuel does not challenge, whereas in both the Kentucky and Texas cases, the commission first established the just and reasonable rate of return and then imposed a reduction expressly as a penalty. *See South Cent. Bell,* 637 S.W.2d at 651; *Houston Lighting & Power Co.,* 715 S.W.2d at 101. This implicitly raises the question of whether the adjusted rates were still just and reasonable, a question not at issue in the instant case. Indeed, the Texas court recognized that its public service commission had the authority to adjust the rate of return to address management concerns so long as the result was just and reasonable. *Houston Lighting & Power Co.,* 715 S.W.2d at 102; *accord In re General Tel. Co.,* 652 P.2d 1200, 1209 (N.M.1982).[11] We therefore hold that when determining a utility's "just and reasonable" rate of return on equity, the Commission has the authority to consider the utility's affiliate relation-

10. *Compare* Utah Code Ann. §§ 54–3–1, –4–1 *with* Ky.Rev.Stat.Ann. §§ 278.030, .040(2), .260, .270, *cited in South Cent. Bell,* 637 S.W.2d at 652 *and* Tex.Rev.Civ.Stat.Ann. art. 1446c, §§ 39, 40, *cited in Houston Lighting & Power Co.,* 715 S.W.2d at 102.

11. Our holding today is not inconsistent with this court's decision in *Kearns–Tribune Corp. v. Public Service Commission,* 682 P.2d 858 (Utah 1984). In that case, we set aside a Commission rule requiring that utility advertising that is promotional, institutional, or political in nature clearly identify its source of funding. We held that because this rule had no nexus to the regulation of rates and service, the Commission had exceeded its statutory authority. *See id.* at 860. In the instant case, there is little doubt that mismanagement of the type identified by the Commission may affect the quality of service provided to Mt. Fuel's ratepayers.

ships and how they affect the quality of service.

■ A more difficult question is presented by Mt. Fuel's alternative claim that the Commission's decision to reduce the rate of return by 0.1% is not supported by substantial evidence. The UAPA requires that agency action be based on "substantial evidence when viewed in light of the whole record." Utah Code Ann. § 63–46b–16(4)(g). We have defined "substantial evidence" as "that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *First Nat'l Bank of Boston*, 799 P.2d at 1165.

■ From our review of the record, we find that there is substantial evidence to support the Commission's decision to decrease the rate of return as a means to encourage Mt. Fuel to modify its affiliate relationships. There was ample evidence before the Commission to suggest that Mt. Fuel's relationships with Questar and various affiliates carried the potential for costs and risks to Mt. Fuel customers that they would not incur in a true market setting. For example, one Division witness testified that Mt. Fuel was a "captive customer" of Questar and therefore Questar had no incentive to deliver efficient service to Mt. Fuel. The witness also said that because Questar is engaged in other businesses in competitive markets, "there may be an incentive to allocate a higher proportion of the costs" to Mt. Fuel. Furthermore, the witness testified that the Division, based on its investigation, had observed "a number of examples of [Questar] policy decisions and actions that ... appear to be contrary to the best interests of the customers" of Mt. Fuel.

It is true, as Mt. Fuel asserts, that the Commission approved Mt. Fuel's relationship with Questar in a 1984 order formally authorizing the reorganization that resulted in the current corporate structure. However, one condition of the order was that Mt. Fuel maintain an "arms-length" relationship with Questar and its affiliates. The Commission heard testimony that this condition had been violated several times.

For example, a Division witness testified that "[i]t is clear" that Mt. Fuel "has given preference to affiliate providers of goods and services." He stated that he had found "no instance where an affiliated entity was required to compete in an open market situation for the business contract or transactions it had with Mountain Fuel Supply."

■ Mt. Fuel argues that none of the evidence presented to the Commission establishes that ratepayers *actually* incurred increased costs as a result of its corporate relationship with Questar and its affiliates. Although our review of the record suggests that this assertion is true, the implication of the evidence before the Commission, as suggested by the excerpts above, is obvious. At bottom, we cannot say that the Commission must wait to act until there is specific irrefutable evidence of the impact on consumer costs.

However, the question of whether the evidence is sufficient to support the Commission's decision to decrease the rate of return by 0.1% remains. The Commission does not attempt to explain or to refer us to any evidence suggesting why a 0.1% decrease is appropriate, as opposed to, for example, a 0.05% or 0.2% decrease. Rather, the Commission contends that it can establish the rate of return at any level it determines so long as it is within the range established by expert testimony and is not confiscatory. Thus, the Commission argues, because Mt. Fuel does not claim that the reduction in the instant case is confiscatory and the 12.1% rate of return authorized falls within the 11.6% to 13% range established by expert testimony, Mt. Fuel's argument must be rejected.

■ We recognize that it may be difficult to articulate why a particular decrease in the rate of return is more appropriate than another as a method to prompt a utility to correct mismanagement or inefficiency. However, the Commission must provide some rationale for its choice, if for no other reason than to insure that its power is exercised equitably with respect to all utilities under its jurisdiction. *See*

*Houston Lighting & Power Co.*, 715 S.W.2d at 104. Otherwise, once the Commission finds utility mismanagement or inefficiency, it could order any reduction it wishes for any reason it wishes, so long as the resulting rate of return is within the range of expert testimony. Without some explanation, we cannot be assured that such action is not arbitrary and capricious. Utah Code Ann. § 63-46b-16(4)(h)(iv); *see also Milne Truck Lines, Inc. v. Public Serv. Comm'n*, 720 P.2d 1373, 1378 (Utah 1986).

Here, the Commission makes no attempt to explain why it reduced the authorized rate of return by 0.1%, much less cite to any evidence supporting its decision. We do not think, however, that this failure warrants setting aside the Commission's determination of the authorized rate of return. Because we have rejected all the other challenges to the Commission's order, the Commission should have the opportunity to explain why it settled on the 0.1% reduction before being forced to reopen the rate-making proceeding. We therefore remand so that the Commission may explain its reasoning and, if possible, make any findings.

In sum, we hold the following: (i) The Commission did not act improperly in deciding to use an historical test year to determine the utility's new rates; (ii) the Commission did not abuse its discretion in refusing to admit evidence of a future test year; (iii) Mt. Fuel has failed to marshal the evidence to challenge the sufficiency of evidence supporting the Commission's decision to reject the utility's proffered post-test-year adjustments, and the Commission's decision to use an unadjusted test year is reasonable; (iv) Mt. Fuel has failed

to show that it was substantially prejudiced by the Commission's decision to use an average rate base rather than a year-end rate base and thus is not entitled to judicial relief on this ground; and (v) the Commission acted within its discretion to reduce the authorized rate of return as a method to correct utility mismanagement or inefficiency but has failed to explain adequately why it reduced the rate of return by 0.1%.[12] Therefore, we affirm the Commission's order but remand for an explanation of the Commission's reasoning with respect to the rate-of-return issue.

HALL, C.J., and HOWE, Associate C.J., concur.

STEWART, J., concurs in the result.

DURHAM, Justice, dissenting:

I respectfully dissent. Utah Code Ann. § 63-46b-16(4)(g) requires an appellate court to review the whole record to determine whether agency action is supported by substantial evidence. "[The] party challenging the [Commission's] findings of fact [Mountain Fuel in this case] must *marshal* all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence." *Grace Drilling v. Board of Review of Indus. Comm'n*, 776 P.2d 63, 68 (Utah Ct.App. 1989) (emphasis in original); *cf. Cornish Town v. Koller*, 758 P.2d 919, 922 (Utah 1988) (to mount an attack on the trial court's findings of fact, "an appellant must marshal the evidence supporting the trial court's findings").

My review of the record persuades me that there simply is *no* competent evidence

---

**12.** In her dissent, Justice Durham first states that she finds no substantial evidence in the record supporting the Commission's decision to rely on an historical test year and then goes on to say that the Commission had no reasonable or rational justification for refusing to take future-test-year evidence. Both arguments miss the mark. As our opinion makes clear, the Commission's adoption of the historical-test-year presumption created an interpretive guideline; it was not a factual finding. As such, the substantial evidence standard is inapposite.

And we cannot see how the Commission's decision not to accept the future-test-year data is unreasonable when Mt. Fuel admitted that it did not know what that data would show. Under Justice Durham's view, apparently, a utility is entitled to put on any evidence possibly germane to the rate-making proceeding without any showing as to whether the evidence has probative value. Nothing in the public utility code, the UAPA, or our case law supports such a position, nor does it make sense as a rule of administrative procedure.

supporting the Commission's decision to rely on an historical test year in this case. The only basis for the decision appears to be precedent, speculation about potential problems with competing economic models, and some financial considerations given cursory treatment only after the Commission denied Mountain Fuel's proposal. None of these considerations rise to the level of satisfying the substantial evidence test.

The fact that historical test years have been used in some past rate-making cases does not by itself reasonably support the decision to use such a test-year period in this case. In fact, the Commission has used both historical and future test years in prior rate-making cases. Indeed, since the 1970s, the general approach has been for Mountain Fuel's rates to be determined on the basis of a future test year.

The Commission expressed concern at the November 21, 1989, hearing about possible problems with "dueling" models used in a future-test-year case. The possibility of such problems is purely speculative given that the models were not even in existence at the time the Commission determined to use an historical test year. Further, Mountain Fuel indicated that competing models would not present the problems that may have arisen in the past because it now uses a technique called the "budgeting process." Mountain Fuel explained that this is a superior method to those used previously because it is more straightforward and more amenable to analysis. Nevertheless, the Commission did not explore the details of the budgeting process, nor did it raise any further concerns about dueling models.

The only plausible basis for the Commission's decision is the impact of general economic circumstances, such as inflation rates, on a test-year period. In its brief, the Commission argues that it took into account economic circumstances in deciding to use an historical test year. However, the record indicates that the Commission in fact never raised or discussed economic circumstances until *after* it rendered its decision rejecting Mountain Fuel's proposal

to put on evidence regarding the test-year issue. Even then, the Commission was only responding to the Committee's request that the Commission take official notice of the inflation rate and all budget filings by the Division and Mountain Fuel for the past five years. The response to that request was simply that "the Commission will do so not passing on whether ... it is necessary or an accurate interpretation of the APA." This responsive statement, made after its decision was rendered, does not indicate that the Commission took economic circumstances into account in deciding to use an historical test year.

Mountain Fuel's main argument at the November 21, 1989, hearing was that it should have the opportunity to present any data it believed was appropriate to establish just and reasonable rates for the 1990s. Mountain Fuel proposed that it file both an historical- and a future-test-year case, allowing the parties to make whatever presentations and arguments they saw fit based on the information from those filings. The Commission might then consider both filings, along with any presentations and arguments, and make a reasonable judgment as to the one most representative of the period for which the rates were to apply. Although Mountain Fuel indicated that it would argue for the future test year, it did not propose that the Commission simply choose the future-test-year period. Mountain Fuel was willing to go forward with evidence for both an historical and a future test year. The Commission, however, rejected Mountain Fuel's proposal, thereby declining to undertake any comparative analysis of the historical and future data. At this point, the majority's assertion that the Commission was merely relying on a "rebuttable presumption" in favor of an historical test year fails. Simply put, Mountain Fuel was denied an opportunity to rebut the Commission's "presumption."

There was no reasonable or rational justification for the Commission's refusal to take evidence from the parties on the test-year issue. The record reveals that the other parties involved, the Division and the

Committee, took the position that it would be helpful and probably appropriate for the Commission to take evidence on the issue and then make its determination as to the proper test-year period. The Committee stated specifically that "there should be a brief factual hearing so that the Commission ha[s] something to base its conclusion on." Although the Commission has some discretion in choosing a test-year period,[1] its decision must rest upon some sound evidentiary basis, not upon fiat. *First Nat'l Bank of Boston v. County Bd. of Equalization,* 799 P.2d 1163, 1166 (Utah 1990); *Hurley v. Board of Review of Indus. Comm'n,* 767 P.2d 524, 526–27 (Utah 1988). The Commission abused its discretion in denying Mountain Fuel the opportunity to be fully heard.

Because the record reveals no competent basis or justification for the Commission's decision, its action was, in my view, unreasonable as an arbitrary and capricious act. In *Milne Truck Lines v. Public Service Commission,* 720 P.2d 1373, 1378 (Utah 1986), this court found it essential that the Commission make subsidiary findings in sufficient detail so as to demonstrate a logical and legal basis for its ultimate conclusions: "[F]indings should be sufficiently detailed to disclose the steps by which the ultimate factual conclusions, or conclusions of mixed fact and law, are reached." *Id.* I believe that in this case, as in *Milne,* this court needs detailed findings to "perform its dut[ies] of reviewing the Commission's order in accordance with established legal principles and of protecting the parties and the public from arbitrary and capricious administrative action." *Id.; see also Mountain States Legal Found. v. Public Serv. Comm'n,* 636 P.2d 1047, 1058 (Utah 1981) (legality and legitimacy of the Commission's orders rest on well-articulated findings and reasons). The Commission has not made sufficiently detailed findings in this case.

Based on the foregoing, I would reverse the Commission's order, remand for a hearing on the test-year question, and decline to reach any of the other issues treated by the majority opinion.